(Slip Opinion) OCTOBER TERM, 2010 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## SCHINDLER ELEVATOR CORP. *v.* UNITED STATES EX REL. KIRK

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 10–188.  Argued March 1, 2011—Decided May 16, 2011

The public disclosure bar of the False Claims Act (FCA) generally forecloses private parties from bringing *qui tam* suits to recover falsely or fraudulently obtained federal payments where those suits are "based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media." 31 U. S. C. §3730(e)(4)(A). Respondent Kirk brought such a suit, alleging that his former employer, petitioner Schindler Elevator Corp., had submitted hundreds of false claims for payment under its federal contracts. To support his allegations, Kirk pointed to information his wife received from the Labor Department (DOL) in response to three requests for records she filed under the Freedom of Information Act (FOIA), 5 U. S. C. §552. Granting Schindler's motion to dismiss, the District Court concluded, *inter alia,* that the FCA's public disclosure bar deprived it of jurisdiction over Kirk's allegations that were based on information disclosed in a Government "report" or "investigation." The Second Circuit vacated and remanded, holding, in effect, that an agency's response to a FOIA request is neither a "report" nor an "investigation."

*Held:* A federal agency's written response to a FOIA request for records constitutes a "report" within the meaning of the FCA's public disclosure bar. Pp. 4–14.

(a) "[R]eport" in this context carries its ordinary meaning. Pp. 4–8.

(1) Because the FCA does not define "report," the Court looks first to the word's ordinary meaning. See, *e.g., Gross* v. *FBL Financial Services, Inc.*, 557 U. S. ___, ___. Dictionaries define "report" as, for example, something that gives information. This ordinary mean-

ing is consistent with the public disclosure bar's generally broad scope, see, *e.g., Graham County Soil and Water Conservation Dist.* v. *United States ex rel. Wilson*, 559 U. S. \_\_\_, \_\_\_, as is evidenced by the other sources of public disclosure in §3730(e)(4)(A), especially "news media." Pp. 4–6.

(2) Nor is there any textual basis for adopting a narrower definition of "report." The Second Circuit committed the very error this Court reversed in *Graham County.* In applying the *noscitur a sociis* canon to conclude that a narrower meaning for "report" was mandated, the court failed to consider all of the sources of public disclosure listed in the statute—in particular, the reference to "news media." See 559 U. S., at \_\_\_. Applying the ordinary meaning of "report" also does not render superfluous the other sources of public disclosure in §3730(e)(4)(A). Pp. 6–8.

(b) The DOL's three written FOIA responses in this case, along with the accompanying records produced to Mrs. Kirk, are "reports" within the public disclosure bar's ordinary meaning. FOIA requires each agency receiving a request to "notify the person making such request of [its] determination and the reasons therefor." 5 U. S. C. §552(a)(6)(A)(i). Like other federal agencies, the DOL has adopted FOIA regulations mandating a written response. Such agency responses plainly fall within the broad, ordinary meaning of "report" as, *e.g.,* something that gives information. Moreover, any records produced along with such responses are part of the responses, just as if they had been produced as an appendix to a printed report. Pp. 8–9.

(c) This Court is not persuaded by assertions that it would be anomalous to read the public disclosure bar to encompass written FOIA responses. Pp. 9–14.

(1) The Court's holding is not inconsistent with the public disclosure bar's drafting history. If anything, the drafting history supports this Court's holding. Kirk's case seems a classic example of the "opportunistic" litigation that the public disclosure bar is designed to discourage. *Id.,* at \_\_\_. Anyone could identify a few regulatory filing and certification requirements, submit FOIA requests until he discovers a federal contractor who is out of compliance, and potentially reap a windfall in a *qui tam* action under the FCA. Pp. 9–11.

(2) Nor will extending the public disclosure bar to written FOIA responses necessarily lead to unusual consequences. Kirk argues that the Court's ruling would allow a suit by a *qui tam* relator possessing records whose release was required by FOIA even absent a request, but bar an action by a relator who got the same documents by way of a FOIA request. Even assuming, as Kirk does, that unrequested records are not covered by the public disclosure bar, the

Court is not troubled by the different treatment. By its plain terms, the bar applies to some methods of public disclosure and not to others. See *Graham County,* 559 U. S., at \_\_\_. It would not be anomalous if some methods of FOIA disclosure fell within the bar's scope and some did not. Moreover, Kirk's assertion that potential defendants will now insulate themselves from liability by making a FOIA request for incriminating documents is pure speculation. Cf. *id.,* at \_\_\_. There is no suggestion that this has occurred in those Circuits that have long held that FOIA responses are "reports" within the public disclosure bar's meaning. Pp. 11–13.

(3) Even if the foregoing extratextual arguments were accepted, Kirk and his *amici* have provided no principled way to define "report" to exclude FOIA responses without excluding other documents—*e.g.*, the Justice Department's annual report of FOIA statistics—that are indisputably reports. Pp. 13–14.

(d) Whether Kirk's suit is "based upon . . . allegations or transactions" disclosed in the reports at issue is a question to be resolved on remand. P. 14.

601 F. 3d 94, reversed and remanded.

THOMAS, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, KENNEDY, and ALITO, JJ., joined. GINSBURG, J., filed a dissenting opinion, in which BREYER and SOTOMAYOR, JJ., joined. KAGAN, J., took no part in the consideration or decision of the case.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports.  Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 10–188

_____

## SCHINDLER ELEVATOR CORPORATION, PETITIONER *v.* UNITED STATES EX REL. DANIEL KIRK

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

[May 16, 2011]

JUSTICE THOMAS delivered the opinion of the Court.

The False Claims Act (FCA), 31 U. S. C. §§3729–3733, prohibits submitting false or fraudulent claims for payment to the United States, §3729(a), and authorizes *qui tam* suits, in which private parties bring civil actions in the Government's name, §3730(b)(1).  This case concerns the FCA's public disclosure bar, which generally forecloses *qui tam* suits that are "based upon the public disclosure of allegations or transactions . . . in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation."  §3730(e)(4)(A) (footnote omitted).[1] We must decide whether a federal agency's written response to a request for records under the Freedom of Information Act (FOIA), 5 U. S. C. §552, constitutes a "report" within the meaning of the public disclosure bar.

_____

[1] During the pendency of this case, the Patient Protection and Affordable Care Act, 124 Stat. 119, amended the public disclosure bar. Because the amendments are not applicable to pending cases, *Graham County Soil and Water Conservation Dist.* v. *United States ex rel. Wilson*, 559 U. S. ___, ___, n. 1 (2010) (slip op., at 1, n. 1), this opinion refers to the statute as it existed when the suit was filed.

We hold that it does.

## I

Petitioner Schindler Elevator Corporation manufactures, installs, and services elevators and escalators.[2]  In 1989, Schindler acquired Millar Elevator Industries, Inc., and the two companies merged in 2002.

Since 1999, Schindler and the United States have entered into hundreds of contracts that are subject to the Vietnam Era Veterans' Readjustment Assistance Act of 1972 (VEVRAA).  That Act requires contractors like Schindler to report certain information to the Secretary of Labor, including how many of its employees are "qualified covered veterans" under the statute.  38 U. S. C. §4212(d)(1).  VEVRAA regulations required Schindler to agree in each of its contracts that it would "submit VETS–100 Reports no later than September 30 of each year."  48 CFR §52.222–37(c) (2008); see also §22.1310(b).

Respondent Daniel Kirk, a United States Army veteran who served in Vietnam, was employed by Millar and Schindler from 1978 until 2003.  In August 2003, Kirk resigned from Schindler in response to what he saw as Schindler's efforts to force him out.[3]

In March 2005, Kirk filed this action against Schindler under the False Claims Act, which imposes civil penalties and treble damages on persons who submit false or

---

[2] The facts in this Part, which we must accept as true, are taken from the amended complaint and the filings submitted in opposition to Schindler's motion to dismiss.

[3] Kirk filed a complaint with the Department of Labor's Office of Federal Contract Compliance Programs (OFCCP), claiming that he had been "improperly demoted and constructively terminated by Schindler despite his status as a Vietnam era veteran." App. 23a.  The OFCCP investigated Schindler's compliance with VEVRAA and found insufficient evidence to support Kirk's claim.  In November 2009, the Department of Labor affirmed the OFCCP's finding.  601 F. 3d 94, 99 (CA2 2010).

fraudulent claims for payment to the United States. 31 U. S. C. §3729(a). The FCA authorizes both civil actions by the Attorney General and private *qui tam* actions to enforce its provisions. §3730. When, as here, the Government chooses not to intervene in a *qui tam* action, the private relator stands to receive between 25% and 30% of the proceeds of the action. §3730(d)(2).

In an amended complaint filed in June 2007, Kirk alleged that Schindler had submitted hundreds of false claims for payment under its Government contracts. According to Kirk, Schindler had violated VEVRAA's reporting requirements by failing to file certain required VETS–100 reports and including false information in those it did file. The company's claims for payment were false, Kirk alleged, because Schindler had falsely certified its compliance with VEVRAA. Kirk did not specify the amount of damages he sought on behalf of the United States, but he asserted that the value of Schindler's VEVRAA-covered contracts exceeded $100 million.

To support his allegations, Kirk pointed to information his wife, Linda Kirk, received from the Department of Labor (DOL) in response to three FOIA requests. Mrs. Kirk had sought all VETS–100 reports filed by Schindler for the years 1998 through 2006. The DOL responded by letter or e-mail to each request with information about the records found for each year, including years for which no responsive records were located. The DOL informed Mrs. Kirk that it found no VETS–100 reports filed by Schindler in 1998, 1999, 2000, 2002, or 2003. For the other years, the DOL provided Mrs. Kirk with copies of the reports filed by Schindler, 99 in all.

Schindler moved to dismiss on a number of grounds, including that the FCA's public disclosure bar deprived the District Court of jurisdiction. See §3730(e)(4)(A). The District Court granted the motion, concluding that most of Kirk's allegations failed to state a claim and that the

remainder were based upon the public disclosure of alle-
gations or transactions in an administrative "report" or
"investigation." 606 F. Supp. 2d 448 (SDNY 2009).

The Court of Appeals for the Second Circuit vacated and
remanded. 601 F. 3d 94 (2010). The court effectively held
that an agency's response to a FOIA request is neither a
"report" nor an "investigation" within the meaning of the
FCA's public disclosure bar. See *id.*, at 103–111 (agreeing
with *United States ex rel. Haight* v. *Catholic Healthcare
West*, 445 F. 3d 1147 (CA9 2006), and disagreeing with
*United States ex rel. Mistick PBT* v. *Housing Auth. of
Pittsburgh*, 186 F. 3d 376 (CA3 1999)). We granted certio-
rari, 561 U. S. ___ (2010), and now reverse and remand.

## II

Schindler argues that "report" in the FCA's public dis-
closure bar carries its ordinary meaning and that the
DOL's written responses to Mrs. Kirk's FOIA requests are
therefore "reports." We agree.[4]

### A
#### 1

Adopted in 1986, the FCA's public disclosure bar pro-
vides:

> "No court shall have jurisdiction over an action under
> this section based upon the public disclosure of allega-
> tions or transactions in a criminal, civil, or adminis-
> trative hearing, in a congressional, administrative, or
> Government Accounting Office report, hearing, audit,
> or investigation, or from the news media, unless the
> action is brought by the Attorney General or the
> person bringing the action is an original source of

---

[4] Because we conclude that a written response to a FOIA request
qualifies as a "report" within the meaning of the public disclosure bar,
we need not address whether an agency's search in response to a FOIA
request also qualifies as an "investigation."

the information." 31 U. S. C. §3730(e)(4)(A) (footnote omitted).

Because the statute does not define "report," we look first to the word's ordinary meaning. See *Gross* v. *FBL Financial Services, Inc.*, 557 U. S. \_\_\_, \_\_\_ (2009) (slip op., at 7) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose" (internal quotation marks omitted)); *Asgrow Seed Co.* v. *Winterboer*, 513 U. S. 179, 187 (1995) ("When terms used in a statute are undefined, we give them their ordinary meaning"). A "report" is "something that gives information" or a "notification," Webster's Third New International Dictionary 1925 (1986), or "[a]n official or formal statement of facts or proceedings," Black's Law Dictionary 1300 (6th ed. 1990). See also 13 Oxford English Dictionary 650 (2d ed. 1989) ("[a]n account brought by one person to another"); American Heritage Dictionary 1103 (1981) ("[a]n account or announcement that is prepared, presented, or delivered, usually in formal or organized form"); Random House Dictionary 1634 (2d ed. 1987) ("an account or statement describing in detail an event, situation, or the like").

This broad ordinary meaning of "report" is consistent with the generally broad scope of the FCA's public disclosure bar. As we explained last Term, to determine the meaning of one word in the public disclosure bar, we must consider the provision's "entire text," read as an "integrated whole." *Graham County Soil and Water Conservation Dist.* v. *United States ex rel. Wilson*, 559 U. S. \_\_\_, \_\_\_, \_\_\_, n. 12 (2010) (slip op., at 8, 12, n. 12); see also *Tyler* v. *Cain*, 533 U. S. 656, 662 (2001) ("We do not . . . construe the meaning of statutory terms in a vacuum"). The other sources of public disclosure in §3730(e)(4)(A), especially "news media," suggest that the public disclosure bar pro-

vides "a broa[d] sweep." *Graham County*, *supra,* at ___ (slip op., at 8). The statute also mentions "administrative hearings" twice, reflecting intent to avoid underinclusiveness even at the risk of redundancy.

The phrase "allegations or transactions" in §3730(e)(4)(A) additionally suggests a wide-reaching public disclosure bar. Congress covered not only the disclosure of "allegations" but also "transactions," a term that courts have recognized as having a broad meaning. See, *e.g., Moore* v. *New York Cotton Exchange*, 270 U. S. 593, 610 (1926) ("'Transaction' is a word of flexible meaning"); *Hamilton* v. *United Healthcare of La., Inc.*, 310 F. 3d 385, 391 (CA5 2002) ("[T]he ordinary meaning of the term 'transaction' is a broad reference to many different types of business dealings between parties").

2

Nor is there any textual basis for adopting a narrower definition of "report." The Court of Appeals, in holding that FOIA responses were not "reports," looked to the words "hearing, audit, or investigation," and the phrase "criminal, civil, [and] administrative hearings." It concluded that all of these sources "connote the synthesis of information in an investigatory context" to "serve some end of the government." 601 F. 3d, at 107; cf. Brief for Respondent 30, n. 15 ("Each is part of the government's ongoing effort to fight fraud"). Applying the *noscitur a sociis* canon, the Court of Appeals then determined that these "'neighboring words'" mandated a narrower meaning for "report" than its ordinary meaning. 601 F. 3d, at 107.

The Court of Appeals committed the very error we reversed in *Graham County*. Like the Fourth Circuit in that case, the Second Circuit here applied the *noscitur a sociis* canon only to the immediately surrounding words, to the exclusion of the rest of the statute. See 601 F. 3d, at 107,

n. 6. We emphasized in *Graham County* that "*all* of the sources [of public disclosure] listed in §3730(e)(4)(A) provide interpretive guidance." 559 U. S., at ___ (slip op., at 8). When all of the sources are considered, the reference to "news media"—which the Court of Appeals did not consider—suggests a much broader scope. *Ibid.*

The Government similarly errs by focusing only on the adjectives "congressional, administrative, or [GAO],"[5] which precede "report." Brief for United States as *Amicus Curiae* 18. It contends that these adjectives suggest that the public disclosure bar applies only to agency reports "analogous to those that Congress and the GAO would issue or conduct." *Ibid.* As we explained in *Graham County*, however, those three adjectives tell us nothing more than that a "report" must be governmental. See 559 U. S*.,* at ___, n. 7 (slip op., at 7, n. 7). The governmental nature of the FOIA responses at issue is not disputed.

Finally, applying the ordinary meaning of "report" does not render superfluous the other sources of public disclosure in §3730(e)(4)(A). Kirk argues that reading "report" to mean "something that gives information" would subsume the other words in the phrase "report, hearing, audit, or investigation." Brief for Respondent 23. But Kirk admits that hearings, audits, and investigations are processes "to *obtain* information." *Ibid.* (emphasis added). Those processes are thus clearly different from "something that *gives* information." Moreover, the statute contemplates some redundancy: An "audit," for example, will often be a type of "investigation."

We are not persuaded that we should adopt a "different, somewhat special meaning" of "report" over the word's

─────────

[5] Although the statute refers to the "Government Accounting Office," it is undisputed that Congress meant the General Accounting Office, also known as GAO and now renamed the Government Accountability Office. See *Graham County*, 559 U. S., at ___, n. 6 (slip op., at 6, n. 6).

"primary meaning." *Muscarello* v. *United States*, 524 U. S. 125, 130, 128 (1998). Indeed, we have cautioned recently against interpreting the public disclosure bar in a way inconsistent with a plain reading of its text. In *Graham County*, we rejected several arguments for construing the statute narrowly, twice emphasizing that the sole "touchstone" in the statutory text is "public disclosure." 559 U. S*.,* at ___, ___ (slip op., at 11, 19). We chose in that case simply to give the text its "most natura[l] read[ing]," *id.,* at ___ (slip op., at 5), and we do so again here.

B

A written agency response to a FOIA request falls within the ordinary meaning of "report." FOIA requires each agency receiving a request to "notify the person making such request of [its] determination and the reasons therefor." 5 U. S. C. §552(a)(6)(A)(i). When an agency denies a request in whole or in part, it must additionally "set forth the names and titles or positions of each person responsible for the denial," "make a reasonable effort to estimate the volume of any [denied] matter," and "provide any such estimate to the person making the request." §§552(a)(6)(C)(i), (F). The DOL has adopted more detailed regulations implementing FOIA and mandating a response in writing. See 29 CFR §70.21(a) (2009) (requiring written notice of the grant of a FOIA request and a description of the manner in which records will be disclosed); §§70.21(b)–(c) (requiring a "brief statement of the reason or reasons for [a] denial," as well as written notification if a record "cannot be located or has been destroyed" (italics deleted)). So, too, have other federal agencies. See, *e.g.,* 28 CFR §16.6 (2010) (Dept. of Justice); 43 CFR §2.21 (2009) (Dept. of Interior); 7 CFR §1.7 (2010) (Dept. of Agriculture). Such an agency response plainly is "something that gives information," a "notification," and an "official or formal statement of facts."

Any records the agency produces along with its written FOIA response are part of that response, "just as if they had been reproduced as an appendix to a printed report." *Mistick*, 186 F. 3d, at 384, n. 5. Nothing in the public disclosure bar suggests that a document and its attachments must be disaggregated and evaluated individually. If an allegation or transaction is disclosed in a record attached to a FOIA response, it is disclosed "in" that FOIA response and, therefore, disclosed "in" a report for the purposes of the public disclosure bar.[6]

The DOL's three written FOIA responses to Mrs. Kirk, along with their attached records, are thus reports within the meaning of the public disclosure bar. Each response was an "official or formal statement" that "[gave] information" and "notif[ied]" Mrs. Kirk of the agency's resolution of her FOIA request.

### III

### A

In interpreting a statute, "[o]ur inquiry must cease if the statutory language is unambiguous," as we have found, and "'the statutory scheme is coherent and consistent.'" *Robinson* v. *Shell Oil Co.*, 519 U. S. 337, 340 (1997) (quoting *United States* v. *Ron Pair Enterprises, Inc.*, 489 U. S. 235, 240 (1989)). We are not persuaded by assertions that it would be anomalous to read the public disclosure bar to encompass written FOIA responses.

### 1

The drafting history of the public disclosure bar does not contradict our holding. As originally enacted in 1863, the FCA placed no restriction on the sources from which a *qui tam* relator could acquire information on which to base a

---

[6] It is irrelevant whether a particular record is itself a report. The attached records do not "becom[e]" reports, 601 F. 3d, at 109, but simply are part of a report.

lawsuit.  See *Graham County*, 559 U. S., at ___ (slip op., at 12).  Accordingly, this Court upheld the recovery of a relator, even though the Government claimed that he had discovered the basis for his lawsuit by reading a federal criminal indictment.  See *United States ex rel. Marcus* v. *Hess*, 317 U. S. 537 (1943).  In response, Congress amended the statute to preclude such "parasitic" *qui tam* actions based on "evidence or information in the possession of the United States . . . at the time such suit was brought."  559 U. S*.,* at ___ (slip op., at 12–13) (internal quotation marks omitted).  Then, in 1986, Congress replaced the so-called Government knowledge bar with the narrower public disclosure bar.  *Id.,* at ___ (slip op., at 13).

The Court of Appeals concluded that it would be inconsistent with this drafting history to hold that written FOIA responses are reports.  The court reasoned that doing so would "essentially resurrect, in a significant subset of cases, the government possession standard . . . repudiated in 1986."  601 F. 3d, at 109.

We disagree with the Court of Appeals' conclusion.  As a threshold matter, "the drafting history of the public disclosure bar raises more questions than it answers." *Graham County, supra,* at ___ (slip op., at 14).  In any event, it is hardly inconsistent with the drafting history to read the public disclosure bar as operating similarly to the Government knowledge bar in a "subset of cases."  601 F. 3d, at 109.  As we have observed, "[r]ather than simply repeal the Government knowledge bar," the public disclosure bar was "an effort to strike *a balance* between encouraging private persons to root out fraud and stifling parasitic lawsuits."  559 U. S*.,* at ___ (slip op., at 13) (emphasis added).

If anything, the drafting history supports our holding.  The sort of case that Kirk has brought seems to us a classic example of the "opportunistic" litigation that the public disclosure bar is designed to discourage.  *Ibid.* (internal

quotation marks omitted). Although Kirk alleges that he became suspicious from his own experiences as a veteran working at Schindler, anyone could have filed the same FOIA requests and then filed the same suit. Similarly, anyone could identify a few regulatory filing and certification requirements, submit FOIA requests until he discovers a federal contractor who is out of compliance, and potentially reap a windfall in a *qui tam* action under the FCA. See Brief for Chamber of Commerce of the United States of America et al. as *Amici Curiae* 20 ("Government contractors . . . are required to submit certifications related to everything from how they dispose of hazardous materials to their affirmative action plans" (citing 40 U. S. C. §3142 and 29 U. S. C. §793)).[7]

2

Nor will extending the public disclosure bar to written FOIA responses necessarily lead to unusual consequences. FOIA requires agencies to release some records even absent a request. See 5 U. S. C. §§552(a)(1), (2). Kirk argues that it would be strange that two relators could obtain copies of the same document but that only the relator who got the document in response to a FOIA request would find his case barred.

This argument assumes that records released under FOIA, but not attached to a written FOIA response, do not fall within the public disclosure bar. We do not decide that question. But even assuming, as Kirk does, that such records are not covered by the public disclosure bar, we

_____

[7] There is no merit to the suggestion that the public disclosure bar is intended only to exclude *qui tam* suits that "ride the investigatory coattails of the government's own processes." Brief for Taxpayers Against Fraud Education Fund as *Amicus Curiae* 25, 26; see *Graham County,* 559 U. S., at ___ (slip op., at 19) (rejecting the argument that the public disclosure bar applies only to allegations or transactions that "have landed on the desk of a DOJ lawyer").

are not troubled by the different treatment.  By its plain terms, the public disclosure bar applies to some methods of public disclosure and not to others.  See *Graham County, supra,* at ___ (slip op., at 4) ("[T]he FCA's public disclosure bar . . . deprives courts of jurisdiction over *qui tam* suits when the relevant information has already entered the public domain through *certain channels*" (emphasis added)).  It would not be anomalous if some methods of FOIA disclosure fell within the scope of the public disclosure bar and some did not.

We also are not concerned that potential defendants will now insulate themselves from liability by making a FOIA request for incriminating documents.  This argument assumes that the public disclosure of information in a written FOIA response forever taints that information for purposes of the public disclosure bar.  But it may be that a relator who comes by that information from a different source has a legitimate argument that his lawsuit is not "based upon" the initial public disclosure.  31 U. S. C. §3730(e)(4)(A).  That question has divided the Courts of Appeals, and we do not resolve it here.  See *Glaser* v. *Wound Care Consultants, Inc.*, 570 F. 3d 907, 915 (CA7 2009) (describing the split in authority).  It may also be that such a relator qualifies for the "original source" exception.[8]

In any event, the notion that potential defendants will make FOIA requests to insulate themselves from liability

_____

[8] An "original source" is "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." §3730(e)(4)(B).  Some Courts of Appeals have narrowly construed the exception to limit "original sources" to those who were the cause of the public disclosure, while others have been more generous.  See *United States ex rel. Duxbury* v. *Ortho Biotech Prods., L. P.*, 579 F. 3d 13, 22 (CA1 2009) (describing a three-way split among the Courts of Appeals).  That question is not before us, and we do not decide it.

is pure speculation. Cf. *Graham County*, 559 U. S., at ___ (slip op., at 19) (rejecting as "strained speculation" an argument that local governments will manipulate the public disclosure bar to escape liability). There is no suggestion that this has occurred in those Circuits that have long held that FOIA responses are "reports" within the meaning of the public disclosure bar.

B

Even if we accepted these extratextual arguments, Kirk and his *amici* have provided no principled way to define "report" to exclude FOIA responses without excluding other documents that are indisputably reports. The Government, for example, struggled to settle on a single definition. Compare Brief for United States as *Amicus Curiae* 19 ("report" must be read to "reflect a focus on situations in which the government is conducting, or has completed, some focused inquiry or analysis concerning the relevant facts") with *id.,* at 21 ("A FOIA response is not a 'report' . . . because the federal agency is not charged with uncovering the truth of any matter"), and Tr. of Oral Arg. 33 ("[T]he way to think about it is whether or not the agency . . . is engaging in a substantive inquiry into and a substantive analysis of information"). It is difficult to see how the Department of Justice's "Annual Report" of FOIA statistics—something that is indisputably a Government report—would qualify under the latter two definitions. See Dept. of Justice, Freedom of Information Act Annual Report, Fiscal Year 2010, http://www.justice.gov/oip/annual_report/2010/cover.htm (as visited May 12, 2011, and available in Clerk of Court's case file); see also Tr. of Oral Arg. 19 (Kirk conceding that the DOJ annual report is a report). And even if the first definition arguably encompasses that report, it would seem also to include FOIA responses, which convey the results of a Government agency's "focused inquiry."

Kirk also was unable to articulate a workable definition. His various proposed definitions suffer the same deficiencies as the Government's. Compare Brief for Respondent 27 and Tr. of Oral Arg. 17–18 with Brief for Respondent 34–39 and Tr. of Oral Arg. 23. Kirk's first suggestion would exclude "a lot of things that are labeled . . . report," *id.,* at 22, and the second—the definition advanced by the Court of Appeals—would seem to include written FOIA responses, *id.*, at 28–29. In the end, it appears that the "only argument is that FOIA is a different kind of mission"—"a special case." *Id.,* at 31. We see no basis for that distinction and adhere to the principle that undefined statutory terms carry their ordinary meaning.

\*      \*      \*

The DOL's three written FOIA responses in this case, along with the accompanying records produced to Mrs. Kirk, are reports within the meaning of the public disclosure bar. Whether Kirk's suit is "based upon . . . allegations or transactions" disclosed in those reports is a question for the Court of Appeals to resolve on remand. The judgment of the United States Court of Appeals for the Second Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE KAGAN took no part in the consideration or decision of this case.

# SUPREME COURT OF THE UNITED STATES

No. 10–188

SCHINDLER ELEVATOR CORPORATION, PETI-
TIONER *v.* UNITED STATES EX REL.
DANIEL KIRK

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SECOND CIRCUIT

[May 16, 2011]

JUSTICE GINSBURG, with whom JUSTICE BREYER and
JUSTICE SOTOMAYOR join, dissenting.

The Veteran Era Veterans' Readjustment Assistance
Act of 1972 (VEVRAA) requires federal contractors to
certify, each year, the number of "qualified covered veter-
ans" they employ and related information. 38 U. S. C.
§4212(d); 48 CFR §§22.1310(b) and 52.222–37(c) (2008).
Respondent Daniel A. Kirk, a Vietnam War veteran and a
former employee of petitioner Schindler Elevator Corpora-
tion (Schindler), had cause to believe, based on his own
experience and observations, that Schindler failed to meet
VEVRAA's annual information-reporting requirements.
To confirm and support his on-the-job observations, Kirk
obtained, through several Freedom of Information Act
(FOIA) requests to the Department of Labor (DOL), copies
of Schindler's VEVRAA filings. The DOL responses re-
vealed that, in some years, Schindler filed no information,
while in some other years, the corporation filed false in-
formation. Armed with the DOL's confirmation of his own
impressions, Kirk commenced suit against Schindler
under the federal False Claims Act (FCA), 31 U. S. C.
§3729 *et seq.*

In a carefully developed, highly persuasive opinion, the
Second Circuit explained why a federal agency's response

to a FOIA request should not automatically qualify as
a "report, hearing, audit, or investigation" preclusive of a
whistleblower's lawsuit under the public disclosure bar of
the FCA, §3730(e)(4).  I would affirm the Second Circuit's
judgment as faithful to the text, context, purpose, and
history of the FCA's public disclosure bar.

The Court finds no "textual basis" for the Second Cir-
cuit's interpretation of the statutory language.  *Ante*, at 6.
But the Court of Appeals' opinion considered text as well
as context.   Leaving aside the term "report," the court
explained:

> "All of the other terms in [§3730(e)(4)(A)'s] list of
> enumerated sources connote the synthesis of informa-
> tion in an investigatory context.   '[C]riminal, civil,
> [and] administrative hearings,' for instance, all entail
> a government inquiry into a given subject, here into
> an alleged case of fraud.  Similarly, government 'hear-
> ing[s and] audit[s]' are processes by which information
> is compiled with the concerted aim of deepening a
> government entity's knowledge of a given subject or,
> often, determining whether a party is in compliance
> with applicable law. . . .
>
>     "In this context, the term 'report' most readily bears
> a narrower meaning than simply 'something that
> gives information.'   Rather, it connotes the compila-
> tion or analysis of information with the aim of synthe-
> sizing that information in order to serve some end of
> the government, as in a 'hearing' or 'audit.'   It does
> not naturally extend to cover the mechanistic produc-
> tion of documents in response to a FOIA request made
> by a member of the public."  601 F. 3d 94, 107 (2010)
> (citations omitted).

Focusing on the FOIA requests in this case, the Court of
Appeals observed that DOL's responses did not "synthe-
size the documents or their contents with the aim of itself

gleaning any insight or information, as . . . it necessarily would in conducting a 'hearing' or 'audit.'" *Id.*, at 108. Far from "compil[ing] or synthesiz[ing] information to serve its own investigative or analytic ends," *id.*, at 111, DOL merely assembled and duplicated records, or noted the absence of records.

Contrary to the Court's assertion, moreover, the Second Circuit was mindful of the "error we reversed in *Graham County* [*Soil and Water Conservation Dist.* v. *United States ex rel. Wilson*, 559 U. S. \_\_\_ (2010)]," *ante*, at 6; the Court of Appeals used the *noscitur a sociis* canon only "as a guide in sifting through the common understandings of 'report' and 'investigation' to discover their intended meaning within the FCA." 601 F. 3d, at 108, n. 6. The court explained:

> "We . . . have not used the canon to impose commonality on terms that 'do not share any . . . core of meaning,' *Graham County*, [559 U. S., at \_\_\_, n. 7 (slip op., at 7, n. 7)]. To the contrary, the terms 'hearing,' 'report,' 'audit,' and 'investigation' all refer to processes of uncovering and analyzing information or to the products of those processes. Our interpretation focuses on their shared 'core of meaning.'" *Ibid.*

The Court faults the Court of Appeals for not considering §3730(e)(4)(A)'s "reference to 'news media,'" *ante*, at 7, suggesting that this omission overlooked *Graham County*'s observation that "*all* of the sources [of public disclosure] listed in §3730(e)(4)(A) provide interpretive guidance." 559 U. S., at \_\_\_ (slip op., at 8). Schindler did not make this argument below. In any event, the point would have been unavailing. Disclosures "of allegations or transactions . . . from the *news* media," §3730(e)(4)(A) (emphasis added), share a common core of meaning with disclosures in other sources that involve "processes of uncovering and analyzing information or . . . the products of those proc-

esses."  601 F. 3d, at 108, n. 6.

The Court regards the case Kirk has brought as "a classic example of the 'opportunistic' litigation that the public disclosure bar is designed to discourage."  *Ante*, at 10.  But as the Second Circuit observed:

> "[T]he facts of this case belie the assertion that individuals who are not original sources and who obtain information through FOIA requests will generally not be persons with firsthand knowledge of fraud but rather will be opportunistic litigators.  The facts also illustrate how an overbroad reading of the jurisdictional bar would prevent an individual with independent but partial knowledge of a possible fraud would be barred from bringing a lawsuit that is neither parasitic nor frivolous."  601 F. 3d, at 110 (citation omitted).

By ranking DOL's ministerial response an "administrative . . . report," akin to a "Government Accounting Office report," §3730(e)(4)(A) (footnote omitted), the Court weakens the force of the FCA as a weapon against fraud on the part of Government contractors.  Why should a whistleblower attentive to the heightened pleading standards of Federal Rule of Civil Procedure 9(b) be barred from court if he seeks corroboration for his allegations, as Kirk did, through a FOIA request simply for copies of a contractor's filings?  After today's decision, which severely limits whistleblowers' ability to substantiate their allegations before commencing suit, that question is worthy of Congress' attention.