**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1626
_____

UNITED STATES OF AMERICA, EX REL; DAVID W. STEBBINS

v.

MARAPOSA SURGICAL, INC., d/b/a ALLEGHENY VEIN AND VASCULAR;
ROBERT W. TAHARA, M.D.

David W. Stebbins,
Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 1:22-cv-00010)
U.S. District Judge: Honorable Cathy Bissoon
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 2, 2024
_____

Before: SHWARTZ, MATEY, and McKEE, <u>Circuit Judges</u>

(Filed: December 3, 2024)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

**SHWARTZ**, <u>Circuit Judge</u>.

David Stebbins appeals the District Court's order dismissing his False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, lawsuit as barred by the FCA's public disclosure bar. Because the bar applies, we will affirm.

I[1]

A

1

We begin by describing the statutory and regulatory context of Stebbins's FCA claims. The FCA "punishes the knowing presentation of a fraudulent demand for payment to the United States, and permits a private relator [like Stebbins] to bring a <u>qui tam</u> civil suit in the Government's name."[2] <u>United States ex rel. Zizic v. Q2Adm'rs, LLC</u>, 728 F.3d 228, 231 (3d Cir. 2013) (citations omitted). Under 31 U.S.C. § 3730(e)(4)(A) ("the public disclosure bar"), however, a court must dismiss an FCA complaint "if [(1)] substantially the same allegations or transactions as alleged in the

---

[1] Because we are reviewing a district court's order dismissing a complaint under Federal Rule of Civil Procedure 12(b)(6), the facts recited herein are drawn from Stebbins's Amended Complaint, "as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice," <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007), and are accepted as true, <u>see</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

[2] Within sixty days of an FCA suit's filing, the Government may "proceed with the action, in which case the action shall be conducted by the Government." § 3730(b)(4)(A). If the Government declines to intervene, § 3730(b)(4)(B), a successful relator is entitled to reasonable expenses, attorney's fees, and a percentage of the proceeds of the litigation or settlement, § 3730(d)(2).

2

action or claim [(2)] were publicly disclosed . . . in a . . . Federal report . . . or from the news media, . . . unless [(3)] the person bringing the action is an original source of the information." Id.; see Q2Adm'rs, 728 F.3d at 235 (identifying test for the public disclosure bar); see also United States ex rel. Silver v. Omnicare, Inc., 903 F.3d 78, 83 (3d Cir. 2018) (same). The public disclosure bar has a "broad scope," Q2Adm'rs, 728 F.3d at 235 (quoting Schindler Elevator Corp. v. United States ex rel. Kirk, 563 U.S. 401, 408 (2011)), which seeks "to strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits," id. (quoting Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, 559 U.S. 280, 295 (2010)).

2

The FCA punishes the submission to the Government of fraudulent claims for payment under, for example, the Medicare and Medicaid programs.[3] Healthcare providers submit payment claims using a standard form, which requires providers to disclose place-of-service "to determine the acceptability of direct billing" of Medicare and Medicaid services. JA99. Providers may indicate that they provided service at an "[o]ffice" (i.e., a location where a physician "routinely provides health examinations, diagnosis, and treatment of illness or injury on an ambulatory basis"), JA103, or at an

---

[3] Medicare and Medicaid are federally-funded health insurance programs overseen by the Centers for Medicare and Medicaid Services ("CMS"). Medicare pays for services rendered to elderly or disabled beneficiaries, whereas Medicaid pays for services for low-income beneficiaries. Medicaid is jointly funded and administered by the federal government and each participating state.

ambulatory surgery center ("ASC") (i.e., a "freestanding facility, other than a physician's office, where surgical and diagnostic services are provided on an ambulatory basis"), JA104.

By regulation, an office is not an ASC, and an ASC is not an office. See, e.g., 42 C.F.R. § 416.2 (defining ASC as a "distinct entity that operates exclusively for the purpose of providing surgical services"). This distinction is important because Pennsylvania regulates each place of service separately. Pennsylvania's Board of Medicine regulates medical professionals, Lyness v. Pa. State Bd. of Med., 605 A.2d 1204, 1205 (Pa. 1992), whereas its Department of Health ("DOH") regulates ASCs, see 35 Pa. Stat. and Cons. Stat. Ann. §§ 448.806(a) (requiring licensure to maintain or operate a "health care facility"), 448.802a (defining "health care facility" to include "ambulatory surgical facilit[ies]"). To be eligible for Medicare and Medicaid reimbursement, ASCs "must comply with State licensure requirements." 42 C.F.R. § 416.40.

States have authority to identify the types of medical services that are reimbursable. In Pennsylvania, an arteriogram—a medical imaging technique used to identify and assess potential blockages in arteries—is reimbursable when performed in either an office or an ASC, among other places.

B

Maraposa Surgical Inc. is a medical office in Bradford, Pennsylvania. Dr. Robert Tahara, a licensed physician, operates Maraposa as his office-based practice, doing

4

business as "Allegheny Vein and Vascular."[4]  According to Stebbins, Maraposa fraudulently sought reimbursement for the arteriograms performed in its office because those services are not reimbursable as they were performed outside of an ASC in violation of state law.  JA33-34.  Stebbins also alleges that Maraposa did not tell patients that it was not a licensed ASC and therefore failed to obtain informed consent to administer anesthesia when performing arteriograms.

C

Stebbins filed an amended qui tam complaint alleging that Maraposa submitted materially false claims for reimbursement in violation of the FCA, 31 U.S.C. §§ 3729-3733.  Maraposa moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).  The District Court granted the motion,[5] holding, among other things, that the public disclosure bar precluded Stebbins's claims because both the allegedly "misrepresented facts"—Maraposa's certifications to the government that its claims were eligible for reimbursement—and the "true facts"—"the [ambulatory surgical facility] regulations and the absence of [Maraposa] from the list of licensed ASCs"—were publicly available in news media and federal reports.  United States ex rel. Stebbins v. Maraposa Surgical, Inc., No. 22-cv-00010, 2024 WL 1299705, at *1-2 (W.D. Pa. Mar. 27, 2024).

---

[4] We will use "Maraposa" to refer to both Tahara and his practice.

[5] The District Court also granted Maraposa's concurrently-filed motion asking the Court to take judicial notice of various CMS and Pennsylvania DOH regulatory materials. United States ex rel. Stebbins v. Maraposa Surgical, Inc., No. 22-cv-00010, 2024 WL 1299705, at *1-2 (W.D. Pa. Mar. 27, 2024).

Stebbins appeals.

## II[6]

We agree with the District Court that Stebbins's claims are precluded by the public disclosure bar. Stebbins does not contest "that the sources cited by [Maraposa and] the District Court are qualifying sources of public disclosure identified by the statute," Appellant's Br. at 14,[7] and offers no well-pled, fact-based argument that he was "an original source of the information" under § 3730(e)(4)(A).[8] Instead, he argues "Maraposa failed to demonstrate that the information publicly disclosed in any of those sources 'constituted allegations [of fraud] or transactions [warranting an inference] of fraud.'" Appellant's Br. at 14 (quoting Q2Adm'rs, 728 F.3d at 235). We disagree. An allegation of fraud is "an explicit accusation of wrongdoing," whereas a "transaction

---

[6] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

We exercise plenary review of a district court's order granting a motion to dismiss for failure to state a claim. Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220 (3d Cir. 2011). We review a district court's dismissal order based on the public disclosure bar de novo. See United States ex rel. Moore & Co. v. Majestic Blue Fisheries, LLC, 812 F.3d 294, 299 n.3 (3d Cir. 2016).

[7] CMS's online-published data qualifies as "Federal report[s]" under 31 U.S.C. § 3730(e)(4)(A)(ii), see Schindler Elevator Corp., 563 U.S. at 407-08 ("A 'report' is 'something that gives information' or a 'notification,' or '[a]n official or formal statement of facts or proceedings.'" (citations omitted)), and the Pennsylvania DOH's online publications qualify as "news media" under § 3730(e)(4)(A)(ii), see id. (explaining that "news media" provides "a broa[d] sweep" (quoting Graham Cnty., 559 U.S. at 290)).

[8] Stebbins thus has waived any argument with respect to these issues. See, e.g., Travitz v. Ne. Dep't ILGWU Health & Welfare Fund, 13 F.3d 704, 711 (3d Cir. 1994) ("When an issue is not pursued in the argument section of the brief, the appellant has abandoned and waived that issue on appeal.").

warranting an inference of fraud is one that is composed of a misrepresented state of facts plus the actual state of facts." Q2Adm'rs, 728 F.3d at 236.[9] Put differently, "the public disclosure bar applies 'if either Z (fraud) or both X (misrepresented facts) and Y (true facts) are publicly disclosed by way of a listed source." Id. at 236 (internal alterations omitted) (quoting United States ex rel. Atkinson v. Pa. Shipbldg. Co., 473 F.3d 506, 519 (3d Cir. 2007)). If "all of the essential elements of the . . . action's claims" have been disclosed, the claims are barred. United States ex rel. Mistick PBT v. Hous. Auth. of City of Pittsburgh, 186 F.3d 376, 388 (3d Cir. 1999).

We do not decide whether Maraposa engaged in any wrongdoing,[10] but we do conclude that the essential elements of Stebbins's claims were previously disclosed in publicly available databases. Specifically, the essential elements of Stebbins's claims are that Maraposa sought reimbursement for arteriograms performed at a physician's office rather than an ASC, in alleged contravention of Pennsylvania regulations but (1) the CMS "Medicare Physician & Other Practitioners by Provider and Service" payment database

---

[9] Importantly, "[t]he FCA bars suits based on publicly disclosed allegations or transactions, not information." Q2Adm'rs, 728 F.3d at 235 n.6 (internal quotation marks omitted) (quoting United States ex rel. Dunleavy v. County of Delaware, 123 F.3d 734, 740 (3d Cir. 1997), abrogated on other grounds by Graham Cnty., 559 U.S. 280). The "quantum" and type of information must be sufficient to qualify as a transaction before the "bar comes into play." Dunleavy, 123 F.3d at 740-41.

[10] Pennsylvania LCD L35092 and Medicare's Physician Fee Schedule—of which the District Court took judicial notice, Stebbins, 2024 WL 1299705, at *1 n.1—confirm that office-based arteriograms are reimbursable under Medicare, see 35 Pa. Stat. and Cons. Stat. § 448.103 (excluding physicians' offices from Pennsylvania DOH regulations' reach).

showed that the arteriograms (and other services) for which Maraposa sought reimbursement were performed at a medical office,[11] (2) Maraposa was not listed within the Pennsylvania DOH's online searchable database of licensed facilities, including ASCs, and (3) the Pennsylvania DOH's ASC regulations that Maraposa allegedly violated were published online in the Pennsylvania Bulletin. Therefore, the allegedly misrepresented facts and the true facts underlying Stebbins suit were publicly available. See Q2Adm'rs, 728 F.3d at 236. Because anyone could access this publicly available information about the transactions, anyone could file the same suit. See Schindler Elevator Corp., 563 U.S. at 413 ("[A]nyone could have filed the same FOIA requests and then filed the same suit. Similarly, anyone could identify a few regulatory filing and certification requirements, submit FOIA requests until he discovers a federal contractor who is out of compliance, and potentially reap a windfall in a qui tam action under the FCA."). Thus, Stebbins's lawsuit was correctly dismissed as precluded by the public disclosure bar.

III

For the foregoing reasons, we will affirm.

---

[11] Maraposa's reimbursement claims were identifiable within this database using Tahara's and the office's unique ten-digit National Provider Identifiers, which were also publicly available in the online searchable database, "NPI Registry Public Search."