**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 12-2215

———

UNITED STATES OF AMERICA ex rel.
THOMAS M. ZIZIC, M.D.,

Appellant

v.

Q2ADMINISTRATORS, LLC and
RIVERTRUST SOLUTIONS, INC.

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-09-cv-05788)
District Judge: Honorable Norma L. Shapiro

———

Argued January 8, 2013
Before: RENDELL, FISHER and JORDAN, *Circuit Judges*.

(Opinion Filed: August 26, 2013)

Brian J. McCormick, Jr. (ARGUED)
Matthew C. Monroe

Sheller
1528 Walnut Street, 4th Floor
Philadelphia, PA  19102
      *Counsel for Appellant*

Stephanie C. Chomentowski
Blank Rome
130 North 18th Street
1 Logan Square
Philadelphia, PA  19103

Daniel E. Chudd
James C. Cox
Warren J. DeVecchio (ARGUED)
Marina K. Jenkins
Jenner & Block
1099 New York Avenue, Suite 900
Washington, DC  20001
      *Counsel for Q2Administrators, LLC*

James A. Backstrom, Jr.
1500 John F. Kennedy Boulevard
2 Penn Center Plaza, Suite 200
Philadelphia, PA  19102

Jaime L. Derensis
Gary C. Shockley (ARGUED)
Baker, Donelson, Bearman, Caldwell & Berkowitz
211 Commerce Street, Suite 800
Nashville, NC  37201
      *Counsel for RiverTrust Solutions, Inc.*

2

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

Relator Thomas M. Zizic, M.D. ("Zizic") filed this *qui tam*[1] suit under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, alleging that Q2Administrators, LLC ("Q2A") and RiverTrust Solutions, Inc. ("RTS") fraudulently billed the United States for the unperformed review of benefit claim denials that was required by the Medicare Act ("Medicare"), 42 U.S.C. § 1395 *et seq.*, Department of Health and Human Services ("HHS") regulations, and their Government contracts. Q2A and RTS moved to dismiss Zizic's claims for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The District Court dismissed the

---

[1] The term "*qui tam*" is an abbreviation of the phrase "'*qui tam pro domino rege quam pro se ipso in hac parte sequitur*,' which means 'who pursues this action on our Lord the King's behalf as well as his own.'" *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 509 n.1 (3d Cir. 2007) (quoting *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 769 n.1 (2000)). Generally, *qui tam* actions permit private parties to sue to enforce the law on the Government's behalf and reward successful plaintiffs with part of the recovery. *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 647 n.1 (D.C. Cir. 1994).

complaint with prejudice, concluding that it lacked jurisdiction because the allegations against Q2A and RTS were based on certain prior public disclosures and because Zizic was not an original source of that information. For the reasons stated below, we will affirm.

I.

Because Zizic's FCA claims allege Medicare fraud, we first describe those two statutory schemes. Next, we relate the relevant factual background of this case.[2] We finally recount the procedural history of this appeal.

A.

Zizic asserts claims under the FCA, which punishes the knowing presentation of a fraudulent demand for payment to the United States, 31 U.S.C. § 3729(a)(1)(A) & (b)(2)(A)(i), and permits a private relator to bring a *qui tam* civil suit in the Government's name, § 3730(b)(1). To proceed with the suit, the relator must serve on the Government a written statement disclosing "substantially all material evidence and information the person possesses." § 3730(b)(2). If the Government declines to take over the case, § 3730(b)(4)(B), the successful relator is entitled to

---

[2] The factual background is only partially drawn from Zizic's pleadings. *See Atkinson*, 473 F.3d at 514 (recognizing that we may properly consult external evidence in a factual challenge to subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)).

reasonable expenses, attorney's fees, and between 25% and 30% of the proceeds of the litigation, § 3730(d)(2), which include civil penalties and treble damages, § 3729(a)(1). Importantly, the FCA's public disclosure bar divests a court of subject matter jurisdiction over a *qui tam* suit that is based on allegations or transactions that have been publicly disclosed in certain sources, unless a relator is an original source of that information. § 3730(e)(4).[3]

Zizic's FCA claims are based on allegations of fraud related to Medicare, a federal health insurance program for the aged and disabled. Medicare Part B subsidizes the costs

---

[3] The Patient Protection and Affordable Care Act ("PPACA"), Pub. L. No. 111-148, § 10104(j)(2), 124 Stat. 119, 901-02 (2010), amended the FCA's public disclosure bar. But because that amendment is not retroactively applicable to pending cases like Zizic's, *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 283 n.1 (2010), we will discuss the pre-PPACA version of the public disclosure bar, *see Schindler Elevator Corp. v. United States ex rel. Kirk*, 131 S. Ct. 1885, 1889 n.1 (2011). Both the Supreme Court and this Court have frequently detailed the pre-PPACA legislative history of the public disclosure bar, and we will not do so again here. *See, e.g., Kirk*, 131 S. Ct. at 1893-94; *Wilson*, 559 U.S. at 293-300; *United States ex rel. Dunleavy v. Cnty. of Del.*, 123 F.3d 734, 738-40 (3d Cir. 1997), *abrogated on other grounds by Wilson*, 559 U.S. 280; *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. The Prudential Ins. Co.*, 944 F.2d 1149, 1152-54 (3d Cir. 1991).

of covered medical services and devices. 42 U.S.C. § 1395k(a). Covered medical supplies include certain durable medical equipment ("DME"), § 1395x(n) & (s)(6), which are "reasonable and necessary for the diagnosis or treatment of illness or injury," § 1395y(a)(1)(A).

HHS contracts out the administration of DME coverage determinations to a DME Medicare administrative contractor ("DMAC"). § 1395u(a). The DMAC may make an "initial determination" whether a claimant is entitled to benefits, § 1395ff(a)(1)(A), based in part on whether a DME is "reasonable and necessary," 68 Fed. Reg. 63,692, 63,693 (Nov. 7, 2003). If the DMAC denies the claim, the claimant may engage in a five-step appeals process. First, the claimant may request a "redetermination" by the same DMAC. 42 U.S.C. § 1395ff(a)(3).

Second, the claimant may request a "reconsideration," § 1395ff(b)(1)(A), by a qualified independent contractor ("QIC"), § 1395ff(c)(1), which must have "sufficient medical . . . and other expertise . . . and sufficient staffing" for such reconsiderations, § 1395ff(c)(3)(A). If the initial determination was based on whether the DME is medically reasonable and necessary, then the QIC's review "shall include consideration of the facts and circumstances of the initial determination by a panel of physicians or other appropriate health care professionals." § 1395ff(c)(3)(B)(i). Similarly, "[w]here a claim pertains to . . . the provision of items or services by a physician, a reviewing professional must be a physician." 42 C.F.R. § 405.968(c)(3). The QIC's decision with respect to whether the DME is medically reasonable and necessary must "be based on applicable

6

information, including clinical experience (including the medical records of the individual involved) and medical, technical, and scientific evidence," 42 U.S.C. § 1395ff(c)(3)(B)(i), and must include "an explanation of the medical and scientific rationale for the decision," § 1395ff(c)(3)(E).

Third, the claimant may appeal to an administrative law judge ("ALJ"), § 1395ff(b)(1)(A) & (d)(1)(A), who reviews the QIC record, § 1395ff(c)(3)(J). Fourth, the claimant may appeal to the Medicare Appeals Counsel within the Departmental Appeals Board. § 1395ff(b)(1)(A) & (d)(2)(A). Finally, the claimant may seek judicial review. § 1395ff(b)(1)(A) & § 405(g).

## B.

Zizic is the former President and CEO of the now-bankrupt BioniCare Medical Technologies, Inc. ("BioniCare"), a company formed to commercialize the BIO-1000, a DME designed to treat osteoarthritis of the knee. BioniCare attempted to bill Medicare for the BIO-1000, but many claims were denied as not medically reasonable and necessary. Zizic personally participated on behalf of BioniCare in the ALJ appeals of the QIC's denials of the BIO-1000 claims.

From July 2005 to about December 2006, Q2A contracted with HHS to serve as the QIC responsible for review of all DME claim denials across the nation. Q2A frequently denied BIO-1000 claims, always as medically unreasonable and unnecessary. However, Q2A's decisions

7

were reached without the physician review required by the Medicare Act, HHS regulations, and its Government contract, as demonstrated by the lack of evidence of such review in the ALJ files.

According to a March 28, 2007 affidavit by Wayne van Halem ("van Halem"), a former Q2A employee who managed all DME appeals for all DMAC regions from November 2005 to September 2006, Q2A employed only three or four physicians to review several hundred daily appeals of claim denials. Because Q2A was short-staffed, it first implemented an internal policy to deny all BIO-1000 claims, which were reviewed by a single nurse rather than a panel of physicians. Then, Q2A allowed non-physician subcontractors to prepare BIO-1000 appeals for review by a single physician. Q2A finally developed a mail merge letter that automatically denied BIO-1000 claims without any review.

From about January 2007 to the present, RTS replaced Q2A, contracting with HHS to serve as the QIC responsible for review of all DME claim denials throughout the country. RTS consistently denied BIO-1000 claims, often as medically unreasonable and unnecessary. Like Q2A, RTS arrived at its decisions without performing the physician review required by the Medicare Act, HHS regulations, and its Government contract. RTS employed only two physicians to review the more than one hundred thousand annual appeals of claim denials.

On July 26, 2007, BioniCare declared bankruptcy. Amended Complaint at ¶ 10, *Almy v. Sebelius*, No. 08-cv-

8

01245 (D. Md. May 28, 2008). The bankruptcy trustee then sued HHS, seeking the reversal of the denial of seven groups of BIO-1000 claims as neither medically reasonable nor necessary. *Id.* at ¶¶ 1-6. During discovery, HHS produced almost 35,000 pages of documents, Statement of Material Facts in Support of Plaintiff's Motion for Summary Judgment ("Summary Judgment Submission") at ¶¶ 22-27, *Almy v. Sebelius*, No. 08-cv-01245 (D. Md. Nov. 6, 2009), at least some of which contained personal medical information related to individual beneficiaries, *id.* at ¶¶ 46-47. On the trustee's behalf, Zizic "personally reviewed the medical records for claims that [we]re the subject of th[at] complaint and based on [his] experience and expertise . . . , explained why the BIO-1000 was reasonable and medically necessary for the beneficiary." *Id.* at ¶ 68. The trustee moved for summary judgment, arguing that the QICs, which were "funded by a contract with [HHS]," *id.* at ¶ 13, "subjected none of the [BIO-1000] claims to physician or nurse review," *id.* at ¶ 66 (citations omitted), despite the fact that they were "required to use a panel of physicians or other appropriate health care professionals," *id.* at ¶ 13 (quotation omitted). The trustee also alleged that the coverage decisions of the QICs on the medical reasonableness and necessity of the BIO-1000 were inconsistent. *Id.* at ¶¶ 44-45.

9

C.

On December 4, 2009, Zizic filed his complaint asserting FCA claims against Q2A and RTS,[4] to which he attached van Halem's affidavit. The Government declined to intervene. Q2A and RTS moved to dismiss Zizic's complaint with prejudice for lack of subject matter jurisdiction under Rule 12(b)(1). Zizic filed an opposition, which included a request for leave to amend his complaint, but which did not include a draft amended complaint. The District Court, after holding a hearing, granted the motions to dismiss the complaint, concluding that it lacked jurisdiction because the

---

[4] On May 20, 2009, the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21, 123 Stat. 1617 (2009), "amended the FCA and re-designated 31 U.S.C. § 3729(a)(1) as 31 U.S.C. § 3729(a)(1)(A) and 31 U.S.C. § 3729(a)(2) as 31 U.S.C. § 3729(a)(1)(B)." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 303 (3d Cir. 2011). Because Zizic alleged that Q2A violated the FCA from July 2005 to about December 2006, he asserted claims against it under § 3729(a)(1) and (a)(2) (pre-FERA), and because Zizic alleged that RTS violated the FCA from about January 2007 to the present, he asserted claims against it under both § 3729(a)(1) and (a)(2) (pre-FERA) and § 3729(a)(1)(A) and (a)(1)(B) (post-FERA). Here, we are not concerned with the differences between the pre- and post-FERA versions of the FCA because Zizic's "underlying burden to prove a substantive violation of the FCA is in no way intertwined with his burden to establish jurisdiction pursuant to 31 U.S.C. § 3730." *Atkinson*, 473 F.3d at 515.

10

allegations against Q2A and RTS were based on public disclosures, and because Zizic was not an original source of that information.[5]  Zizic timely appealed.

## II.

Zizic argues that the District Court had subject matter jurisdiction over this case under 28 U.S.C. § 1331 and under the FCA, 31 U.S.C. § 3732(a).  We have jurisdiction over this appeal under 28 U.S.C. § 1291.  We exercise plenary review of the District Court's dismissal of the complaint for lack of jurisdiction under the FCA's public disclosure bar, *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007), and we review the District Court's dismissal of the complaint with prejudice for an abuse of discretion, *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011).

Zizic concedes that the District Court correctly concluded that Q2A and RTS launched a factual, rather than facial, jurisdictional attack, Zizic's Opening Br. at 19, by challenging "the actual failure of [his] claims to comport with

---

[5] Q2A and RTS also moved to dismiss Zizic's complaint for failure to allege fraud with particularity, Fed. R. Civ. P. 9(b), and for failure to state a claim on which relief can be granted, Fed. R. Civ. P. 12(b)(6).  Because the District Court dismissed the complaint for lack of subject matter jurisdiction, it did not address these issues, and because we will affirm the District Court on the same basis, neither will we.

11

the jurisdictional prerequisites contained in 31 U.S.C. § 3730(e)(4)," App. at 6 (quoting *Atkinson*, 473 F.3d at 514). Thus, we may properly consult evidence outside Zizic's pleadings. *See Atkinson*, 473 F.3d at 514. Significantly, Zizic bears the burden of persuasion of establishing jurisdiction, *see id.*, and his jurisdictional allegations are not entitled to a presumption of truthfulness, *see id.* at 509 n.4.

III.

In this appeal, Zizic asks us to reverse the District Court on three alternative grounds. First, Zizic asserts that the District Court erred in concluding that the FCA's public disclosure bar applied to his case because his allegations against Q2A and RTS were not based on public disclosures. Second, Zizic claims that even if his allegations against Q2A and RTS were based on public disclosures, the District Court erred in concluding that the public disclosure bar applied to his case because he was an original source of that information. Third, Zizic contends that even if the public disclosure bar did apply to his case, the District Court abused its discretion in dismissing his complaint with prejudice. We address and reject these arguments in the following discussion.

A.

The District Court concluded that the FCA's public disclosure bar divested it of subject matter jurisdiction over Zizic's claims in part because his claims against Q2A and RTS were based on the public disclosure of transactions warranting an inference of fraud in the *Almy* litigation. Zizic

12

disputes the District Court's determination, arguing that the *Almy* litigation did not publicly disclose any fraudulent transaction on which his claims could have been based. We disagree.

The public disclosure bar, in pertinent part, withdraws jurisdiction over a *qui tam* suit that is "based upon the public disclosure of allegations or transactions in a . . . civil . . . hearing." 31 U.S.C. § 3730(e)(4)(A). In other words, the public disclosure bar applies if: "(1) there was a 'public disclosure;' (2) 'in a . . . civil . . . hearing . . . ;' (3) of 'allegations or transactions' of the fraud; [and] (4) that the relator's action was 'based upon.'" *United States ex rel. Paranich v. Sorgnard*, 396 F.3d 326, 332 (3d Cir. 2005) (citation omitted). Although the purpose of the public disclosure bar is "to strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits," *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 295 (2010), it has a "generally broad scope," *Schindler Elevator Corp. v. United States ex rel. Kirk*, 131 S. Ct. 1885, 1891 (2011).

1.

Starting out with the first and second elements, we analyze whether "information was [publicly] disclosed via one of the sources listed in § 3730(e)(4)(A)." *Atkinson*, 473 F.3d at 519. The District Court held that "civil litigation hearings are § 3730(e)(4)(A) public disclosures." App. at 7. Zizic does not contest this conclusion. We too hold that the *Almy* litigation publicly disclosed the information included in the Summary Judgment Submission filed by the trustee, *see*

13

*Paranich*, 396 F.3d at 334 (holding that the public disclosure bar precludes *qui tam* suits based on a complaint filed with the court and available to the public), and the discovery produced by HHS, *see United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. The Prudential Ins. Co.*, 944 F.2d 1149, 1158 (3d Cir. 1991) (holding the same with respect to "discovery material . . . not under any court imposed limitation as to its use").

2.

Moving on to the third element, we consider whether the information publicly disclosed in the *Almy* litigation constituted allegations or transactions of fraud.[6]  An allegation of fraud is an explicit accusation of wrongdoing. *United States ex rel. Dunleavy v. Cnty. of Del.*, 123 F.3d 734, 741 (3d Cir. 1997), *abrogated on other grounds by Wilson*, 559 U.S. 280.  A transaction warranting an inference of fraud is one that is composed of a misrepresented state of facts plus the actual state of facts. *Id.*

We have adopted a formula to represent when information publicly disclosed in a specified source qualifies as an allegation or transaction of fraud:

---

[6] The FCA "bars suits based on publicly disclosed 'allegations or transactions,' not information." *Dunleavy*, 123 F.3d at 740 (quoting *Wang v. FMC Corp.*, 975 F.2d 1412, 1418 (9th Cir. 1992)).

14

"If X + Y = Z, Z represents the allegation of fraud and X and Y represent its essential elements. In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed."

*Id.* (quoting *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994)). The essential elements of the allegation of fraud [Z] are "a misrepresented [X] and a true [Y] state of facts." *Atkinson*, 473 F.3d at 519 (citation omitted). Thus, the public disclosure bar applies "if either Z (fraud) or both X (misrepresented facts) and Y (true facts) are [publicly] disclosed by way of a listed source." *Id.*

The District Court decided that the Summary Judgment Submission publicly disclosed a transaction

15

warranting an inference of fraud.[7]   The District Court's reasoning centered on the trustee's statement:

> "Although the Medicare regulations required physician review at the QIC for claims for services or items provided by a physician, only two of the claims in [a certain case] show any indicia of physician review and only a small number of claims in [the same case] have indicia of nurse review.  None of the claims in the other cases have any evidence of nurse or physician review.  In fact, the QIC that originally reviewed claims for the BIO-1000 subjected none of the claims to physician or nurse review."

---

[7] According to Zizic, an "inference of fraud" is "not sufficient" to invoke the public disclosure bar, Zizic's Opening Br. at 29 (quotation omitted), and "presenting facts, without raising the underlying fraud" is also inadequate to do so, *id.* at 30.  As our discussion indicates, our precedent forecloses these arguments. *See United States ex rel. Mistick PBT v. Hous. Auth. of the City of Pittsburgh*, 186 F.3d 376, 385 (3d Cir. 1999) ("We have held that the public disclosure of a 'transaction[]' within [31 U.S.C. § 3730(e)(4)(A)] requires the disclosure of . . . the misrepresented state of facts and the true state of facts so that the inference of fraud may be drawn." (citing *Dunleavy*, 123 F.3d at 740-41)).

16

App. at 9 (quoting Summary Judgment Submission at ¶ 66).[8] However, The District Court did not separate out the misrepresented facts and the true facts.

Zizic argues that the *Almy* litigation did not publicly disclose a fraudulent transaction. Zizic admits that the true state of facts – that "unnamed QICs performed second-level reviews as part of a five-step appeals process that was generally fraught with problems at each level" – was publicly disclosed in the *Almy* litigation. Zizic's Opening Br. at 28. He asserts, however, that the misrepresented state of facts – that "either [RTS] or Q2A, in particular, performed sham second-level Medicare reviews in violation of Medicare regulations and statutes and their contracts" – was not. *Id.*

---

[8] Zizic implies that the District Court should not have considered the Summary Judgment Submission. Zizic's Opening Br. at 29 n.4 ("It is important to note that Plaintiffs never mentioned or referred to these prior proceedings in their Complaint. The District Court relied entirely on Appellees' Motions to Dismiss[, which referenced the *Almy* litigation.]"). We find this suggestion difficult to square with Zizic's acknowledgement that "[p]leadings in the *Almy* Litigation, which the District Court relied on in its decision, are appropriate in resolving a factual attack on subject matter jurisdiction." Zizic's Reply Br. at 14 (citation omitted). In any event, the District Court appropriately reviewed external evidence in this factual challenge to jurisdiction under Rule 12(b)(1). *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

17

The problem with Zizic's characterization of the misrepresented state of facts is that it is actually an allegation of fraud. The true state of facts, as set forth in Zizic's complaint, is that Q2A and RTS were obligated to perform physician reviews in second-level appeals under Government contracts incorporating Medicare rules, App. at 30 ¶ 3; this true state of facts was publicly disclosed by the trustee, Summary Judgment Submission at ¶ 13 ("If the appeal involves medical necessity, the QIC is required to use a panel of physicians or other appropriate health care professionals. 42 C.F.R. § 405.968(a). If the item is provided by a physician, the QIC must use a physician when conducting the reconsideration. 42 C.F.R. § 405.968(c)(3)." Similarly, the misrepresented state of facts, as set forth in Zizic's complaint, is that Q2A and RTS received payment under those contracts despite their failure to perform such services, App. at 55 ¶ 153; this misrepresented state of facts was also publicly disclosed by the trustee, Summary Judgment Submission at ¶ 13 ("[The QIC] is . . . funded by a contract with [HHS]"); *id.* at ¶ 66 ("None of the claims . . . have any evidence of nurse or physician review [by the QIC]."). Thus, we hold that the *Almy* litigation publicly disclosed a fraudulent transaction.

3.

Finishing up with the fourth element, we decide "whether the relator's complaint is based on those [public] disclosures." *Atkinson*, 473 F.3d at 519. To be based on allegations or transactions of fraud, claims need not be "actually derived from" public disclosures. *United States ex rel. Mistick PBT v. Hous. Auth. of the City of Pittsburgh*, 186 F.3d 376, 385-88 (3d Cir. 1999). Rather, claims need only be

18

"supported by" or "substantially similar to" public disclosures. *Id.*

The District Court concluded that Zizic's claims were substantially similar to the fraud allegation that could be inferred from the fraudulent transaction publicly disclosed in the *Almy* litigation. Zizic contends that his claims were not based on that public disclosure because "the *Almy* Litigation never identifies or refers to [RTS] or Q2A." Zizic's Opening Br. at 31. Zizic attempts to analogize this case to the Seventh Circuit's decision in *United States ex rel. Baltazar v. Warden*, 635 F.3d 866 (7th Cir. 2011). There, the relator alleged that a certain chiropractor submitted fraudulent bills to Medicare, and an HHS report publicly disclosed that about half of a sample of chiropractors engaged in similar improper conduct. The court reasoned that the public disclosure alone would not support an FCA suit because it did not reveal any particular responsible party. Instead, it was only the relator's identification of an individual chiropractor, which placed that particular provider among the unnamed wrongdoers referenced in the report, that enabled an FCA suit. Thus, the court held that the relator's claims were not based on the public disclosure.

Q2A and RTS counter that this case is comparable to the Seventh Circuit's decision in *United States ex rel. Gear v. Emergency Med. Assocs. of Ill., Inc.*, 436 F.3d 726 (7th Cir. 2006). There, the relator alleged that a certain teaching hospital submitted fraudulent bills to Medicare, but Government and media reports publicly disclosed the same fraud throughout that industry. The court rejected the relator's argument that it was impossible to infer the identity

19

of the particular provider he accused from the public disclosures inculpating each and every teaching hospital, and ruled that "[i]ndustry-wide public disclosures bar *qui tam* actions against any defendant who is directly identifiable from the public disclosures." *Id.* at 729 (citations omitted). Thus, the court held that the relator's claims were based on the public disclosures.

This case is closer to *Gear* than to *Baltazar*. Even if Q2A and RTS were not actually identified in the *Almy* litigation, they were directly identifiable from that public disclosure. According to Zizic's complaint, the QIC industry is an industry of one; Q2A and RTS were the only QICs during their respective contractual terms. App. at 32 ¶¶ 12 & 15. Additionally, the identities of Q2A and RTS were publicly available. HHS, Listing of Active Contracts–Centers for Medicare and Medicaid Services 31 (2011), *available at* http://www.hhs.gov/about/smallbusiness/Active%20Contracts /pdf/cms.pdf. Because Q2A and RTS were directly identifiable from the *Almy* litigation, Zizic's claims are substantially similar to the fraudulent transactions in the Summary Judgment Submission.

Separately, Zizic argues that his claims are not substantially similar to the *Almy* litigation because he added some information to the trustee's account of the fraudulent transaction. For example, Zizic points out that the trustee only alleged that QIC coverage decisions about medical reasonableness and necessity were inconsistent, *see* Summary Judgment Submission at ¶¶ 44-45, while he added an allegation that a particular nurse-reviewer at RTS was responsible for the inconsistent coverage determinations,

20

App. at 48 ¶ 124. Zizic's complaint does add some minor details to the trustee's description of the fraudulent transaction.

Nonetheless, the public disclosure bar is not confined to actions "solely based upon" public disclosures. *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 920 (7th Cir. 2009) (citing *United States ex rel. McKenzie v. BellSouth Telecomms., Inc.*, 123 F.3d 935, 940 (6th Cir. 1997); *Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 451 (5th Cir. 1995)). Instead, the public disclosure bar covers actions simply "based upon" public disclosures, including actions "even partly based upon" such allegations or transactions. *Id.* (quoting *United States ex rel. The Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 552 (10th Cir. 1992)). We conclude that Zizic's additional information, *i.e.*, the identity of the QIC employee responsible for the inconsistent coverage determinations, is too insubstantial to prevent his otherwise substantially similar allegations from being based on the *Almy* litigation. Therefore, we hold that Zizic's claims against Q2A and RTS were based on the publicly disclosed fraudulent transaction in the *Almy* litigation.[9]

---

[9] Because we agree with the District Court that Zizic's claims against Q2A and RTS were based on the public disclosure of a fraudulent transaction in the *Almy* litigation, we express no opinion on the District Court's conclusion that Zizic's claims were also based on public disclosures of fraudulent transactions in the Medicare administrative hearings.

21

B.

The District Court's conclusion that the FCA's public disclosure bar deprived it of subject matter jurisdiction over Zizic's claims was also based on its determination that Zizic was not an original source of that information. Zizic protests, arguing that he had direct and independent knowledge of the information on which his allegations against Q2A and RTS were based. We cannot agree.

Even if the public disclosure bar would otherwise apply to a claim, it does not when "the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A). The term "'original source' means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action . . . which is based on the information." § 3730(e)(4)(B). The word "information" in turn refers to the facts on which the relator's allegations are based, not the facts on which the publicly disclosed allegations or transactions of fraud are based. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 470-72 (2007).

1.

The District Court determined that Zizic lacked direct knowledge to the extent his claims against Q2A depended on van Halem's affidavit. A relator possesses direct knowledge if he obtains it without any "intervening agency, instrumentality, or influence." *Paranich*, 396 F.3d at 335 (quotation omitted). In other words, direct knowledge is

22

based on "first-hand" information, *id.* at 336 (quoting *United States ex rel. Findley v. FPC-Boron Emps.' Club*, 105 F.3d 675, 690 (D.C. Cir. 1997)), and it is gained "by the relator's own efforts, and not by the labors of others," *id.* (quoting *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1162 (10th Cir. 1999)).

Zizic argues that his knowledge was direct. He asserts that "no document was ever provided by any third party stating that medical reviews by Q2A . . . were not done . . . in the Medicare Appeal." Zizic's Opening Br. at 42 (emphasis omitted). However, van Halem provided that exact information in his affidavit. App. at 62 ¶ 17 ("[Q2A] simply issued a denial with a mail merge program without according the claims any review.").

Zizic also contends that he had direct knowledge from his personal participation in the ALJ appeals and that van Halem's affidavit "merely substantiated" his "suspicion of fraud." Zizic's Reply Br. at 13. Zizic analogizes his case to the D.C. Circuit's decision in *Springfield*. There, civil discovery publicly disclosed information that did not constitute allegations or transactions of fraud, but that did pique the relator's curiosity. The relator then "conduct[ed] its own investigation" of that information, 14 F.3d at 656, by "interview[ing] with individuals and businesses identified" in the discovery, *id.* at 657. Because the relator "bridged the gap" between the innocuous publicly disclosed information and the allegation of fraud through "its own efforts and experience," the court held that it was an original source. *Id.*

23

Certainly, van Halem did more than substantiate Zizic's suspicions; in fact, the affidavit is the sole source of all of the specific incriminating facts alleged against Q2A in the complaint. Additionally, *Springfield* is distinguishable. At oral argument, Zizic indicated that van Halem reached out to him; unlike the relator in *Springfield*, Zizic did not discover van Halem as a result of his own investigation. Indeed, Zizic has provided no information about his investigation, an omission that is especially troubling in light of the fact that it is Zizic's burden to establish the direct nature of his knowledge. Thus, we conclude that Zizic lacked direct knowledge to the extent his claims against Q2A relied on van Halem's affidavit.

2.

The District Court also determined that Zizic lacked independent knowledge of his surviving claims because his information was based on § 3730(e)(4)(A) public disclosures. A relator's knowledge is independent if it "does not depend on public disclosures."[10] *Atkinson*, 473 F.3d at 520 (citation omitted). Significantly, the concept of a public disclosure under § 3730(e)(4)(B) is broader than the concept of a public disclosure under § 3730(e)(4)(A); a public disclosure under §

---

[10] The relator must know of the public disclosure in order for his information to depend on it. *United States ex rel. Paranich v. Sorgnard*, 396 F.3d 326, 337 & n.12 (3d Cir. 2005). Here, Zizic admits that he knew about the Medicare administrative appeals, App. at 44 ¶ 93; *id.* at 47 ¶ 116; and the *Almy* litigation, Zizic's Reply Br. at 16.

24

3730(e)(4)(B) encompasses not only information that is disclosed via the sources enumerated in § 3730(e)(4)(A), but also information that is part of the public domain. *Id.* at 521-23. This distinction is important. On the one hand, "reliance solely on 'public disclosures' under § 3730(e)(4)(A) is *always* insufficient under § 3730(e)(4)(B) to confer original source status." *Id.* at 522. On the other hand, "reliance on public information that does not qualify as a public disclosure under § 3730(e)(4)(A) may also preclude original source status," *id.*, depending on "the extent of that reliance," and "the nature of the information in the public domain," *id.* (citing *United States ex rel. Barth v. Ridgedale Elec., Inc.*, 44 F.3d 699, 703-04 (8th Cir. 1995)), as well as "the availability of information," and "the amount of labor and deduction required to construct the claim," *id.* (quoting *Kennard v. Comstock Res., Inc.*, 363 F.3d 1039, 1046 (10th Cir. 2004)).

Zizic presents two reasons why his knowledge was not dependent on the *Almy* litigation. First, he asserts that because only he "had the requisite medical expertise and background to understand and review the Medicare appeals files concerning the DMEs" that were produced during discovery in the *Almy* litigation, the trustee relied on his "labor and deduction" to construct her claims. Zizic's Reply Br. at 16. However, we have repeatedly rejected the argument that a realtor's knowledge is independent when it is gained through the application of expertise to information publicly disclosed under § 3730(e)(4)(A). *See, e.g., Atkinson*, 473 F.3d at 526 n.27; *Stinson*, 944 F.2d at 1160. Here, Zizic merely applied his expertise to the information in the *Almy*

25

litigation, a § 3730(e)(4)(A) public disclosure. *See supra* Part III.A.1.

Second, Zizic contends that his knowledge is independent because it is based on his "direct involvement with the DME Medicare appeals . . . over a number of years" prior to the *Almy* litigation. Zizic's Opening Br. at 39; *see also* App. at 44 ¶ 93; *id.* at 47 ¶ 116. According to Zizic, the information in the administrative appeals is not part of the public domain because the public may not obtain that information by participating in those proceedings and because the information in those proceedings is protected pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936 (1996). Moreover, only he could craft his claims, thanks to his medical expertise.

At the outset, the record reflects neither the nature of Zizic's role in the Medicare appeals nor the manner in which he gained his first-hand knowledge. For example, at oral argument, Zizic made the unsupported assertion that he became involved in the five-step appeals process between the QIC's second-level review and the ALJ's third-level review. In contrast, the complaint contains actual information indicating that Zizic's earliest involvement in the appeals process came during the third stage when he reviewed the ALJ files. App. at 44 ¶ 95. Because Zizic has failed to persuade us otherwise, we interpret his argument to be that he

obtained his independent knowledge during the ALJ appeals.[11]

Zizic's argument about the limitation on participation in the ALJ appeals is ultimately unconvincing. It is true that the ALJ appeals are not open to the general public. Nonetheless, the list of possible parties who may participate in the proceedings includes: beneficiaries, provider-assignees, supplier-assignees, and state agencies, 42 C.F.R. § 405.906; HHS and its contractors, § 405.1012; and, significantly, "other persons the ALJ considers necessary and proper," § 405.1030. Of the numerous parties who may review the ALJ appeal files, there are many, such as HHS, beneficiaries, and other providers and suppliers, who would have a compelling interest in bringing FCA claims against HHS contractors like Q2A and RTS. Zizic has not identified who, other than himself, was involved in the BIO-1000 appeals or indicated to what extent the ALJ files became part of the public domain. These omissions are significant because, at this stage of the litigation, Zizic bears the burden of establishing such facts and is not entitled to have us draw inferences in his favor.

Zizic's argument about the impact of HIPAA – namely, that his allegations were based on "the specific and

---

[11] An ALJ hearing is undoubtedly an "administrative hearing" within the meaning of § 3730(e)(4)(A). Here, we will assume, without deciding, that the information in the ALJ appeals is not "publicly disclosed" as that term is used in § 3730(e)(4)(A).

relevant information . . . in the medical charts," and that such information was blocked from the public domain by HIPAA – also fails to save his claims for two reasons. Zizic's Opening Br. at 34. First, Zizic fails to elaborate on what the "specific and relevant" information was and what such information suggested to him. In fact, the complaint reveals that a significant basis of Zizic's claims was that the ALJ "files lacked evidence of the required physician or health care professional review," suggesting that it was the absence of information, not the presence of particular information, that tipped him off. App. at 44 ¶ 95.

Second, it is true that the ALJ records are restricted by HIPAA, 45 C.F.R. § 160.102, and that HIPAA generally prohibits the disclosure of protected health information ("PHI"), § 164.502. But PHI, which includes facts such as names, addresses, dates, contact information, Government identification numbers, insurance policy numbers, and the like, § 164.514, is defined as "individually *identifiable* health information," § 160.103 (emphasis added). In other words, PHI refers to information that could be used to identify a patient. In contrast, a patient's medical history and treatment plan, unlike her name and address, would not usually give away her identity. Thus, the information protected by HIPAA is not the information that would lead to the allegation of fraud Zizic made against Q2A and RTS.

The *Almy* litigation supports our suspicion. There, HHS produced HIPAA-compliant discovery from the ALJ appeals, *see* Summary Judgment Submission at ¶¶ 22-27, which publicly disclosed the medical information of anonymized beneficiaries, *id.* at ¶¶ 46-47. Zizic "personally

28

reviewed" this data, *id.* at ¶ 68, and his review "was the source of the trustee's allegations," Zizic's Reply Br. at 14 (quotation omitted), which we have concluded were substantially similar to his own claims, *supra* Part III.A.3. In short, the *Almy* litigation demonstrates that the ALJ records that were redacted pursuant to HIPAA revealed the information necessary to raise an inference of fraud. Because Zizic failed to show who participated in the ALJ proceedings and who accessed the ALJ records, we cannot assume that the relevant HIPAA-redacted information remained out of the public domain. *See Atkinson*, 473 F.3d at 531 (holding that "a plaintiff/relator cannot rely solely on information in the public domain to substantiate original source status").

Zizic contends, however, that only he could deduce the significance of this information due to his expertise. But Zizic has not explained how his expertise aided his analysis. Surely a member of the public could conclude, with minimal labor, that the absence of evidence of a required review indicates that such a review was never performed. *See Dunleavy*, 123 F.3d at 743 (concluding that the omission of required information in a Government report publicly disclosed the misrepresented state of facts and completed the inference of fraud). Thus, the amount of deduction required to formulate the claims was low. *See Atkinson*, 473 F.3d at 523.

In these circumstances, Zizic has failed to persuade us that he has independent knowledge based on his participation in the ALJ appeals. We acknowledge that the original source exception to the public disclosure bar is a complicated area of the law, and that the HIPAA overlay makes this case

especially challenging. But Zizic, by failing to provide the missing details described in our discussion, has not made our job any easier. Zizic had the chance to supply such information in the District Court by producing his relator statement and by amending his complaint.[12] Zizic did not take advantage of these opportunities and, since he bears the burden of establishing jurisdiction, we will not reward his failure to do so. Because Zizic lacked direct and independent knowledge of the information on which his allegations against Q2A and RTS were based,[13] we conclude that he is not an original source of that information, and that the public disclosure bar precludes jurisdiction over his case.

C.

The District Court implicitly denied Zizic's request for leave to file an amended complaint by granting Q2A's motion to dismiss with prejudice. Zizic charges that the District Court abused its discretion in so doing. We disagree.

---

[12] *See infra* Part III.C.

[13] Because the District Court determined that Zizic lacked direct and independent knowledge of the information on which his allegations were based, it had no occasion to decide whether Zizic voluntarily provided that information to the Government before he filed suit, another original source requirement. 31 U.S.C. § 3730(e)(4)(B). We need not resolve this issue for the same reason.

30

Initially, Zizic was entitled to amend his complaint – and provide the missing information highlighted in our discussion above – once "as a matter of course" within twenty-one days after service of the motions to dismiss by Q2A and RTS. Fed. R. Civ. P. 15(a)(1)(B). Since he did not do so, he could have amended his complaint "only with . . . the [District C]ourt's leave." Rule 15(a)(2). The District Court was to give its leave "freely" if "justice so require[d]." *Id.*

Here, the District Court did not need to "worry about amendment," *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007), because Zizic's request for leave to amend his complaint was improper for two reasons. First, Zizic requested leave to amend his complaint without referencing Rule 12(b)(1) in his opposition to the motions to dismiss, and a "bare request in an opposition to a motion to dismiss – without any indication of the particular grounds on which amendment is sought . . . – does not constitute a motion within the contemplation of Rule 15(a)." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1280 (D.C. Cir. 1994) (quotation omitted). Second, Zizic also neglected to attach a draft amended complaint, a failure that "is fatal to a request for leave to amend." *See Fletcher-Harlee*, 482 F.3d at 252 (citations omitted). Because Zizic did not properly move to amend his complaint, "it could hardly have been an abuse of discretion for the District Court not to have afforded [him] such leave *sua sponte*." *Kowal*, 16 F.3d at 1280 (quotation omitted); *see also Wilkins*, 659 F.3d at 315 (concluding that where the plaintiffs' request for leave to amend their complaint was made in their reply to the

31

defendants' motion to dismiss and without a draft amended complaint, the district court "did not abuse its discretion by denying their deficient request to amend" (citation omitted)).

## IV.

We hold that Zizic's complaint must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1). We conclude that Zizic's claims are foreclosed by the FCA's public disclosure bar because they were based on the fraudulent transaction publicly disclosed in the *Almy* litigation, and because he was not an original source, lacking direct and independent knowledge of the information on which his allegations were based. We also conclude that the District Court did not abuse its discretion in denying Zizic's request for leave to amend his complaint. Therefore, we will affirm the District Court's dismissal of Zizic's complaint with prejudice.