**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

No. 22-2650

————————

MARK TWARDZIK, on behalf of himself and all others similarly situated,

Appellant

v.

HP INC.; NVIDIA CORPORATION

————————————

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 1-21-cv-00396)
Circuit Judge: Honorable Stephanos Bibas

————————————

Argued June 13, 2023

Before: PORTER, FREEMAN, and FISHER, *Circuit Judges*

(Opinion filed: September 7, 2023)

————————

OPINION*

————————

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Glenn Chappell
Tycko & Zavareei
2000 Pennsylvania Avenue NW
Suite 1010
Washington, DC 20006

Spencer S. Hughes [**ARGUED**]
Tycko & Zavareei
1970 Broadway
Suite 1070
Oakland, CA 94612

Nicholas Migliaccio
Jason S. Rathod
Migliaccio & Rathod
412 H Street NE
Suite 302
Washington, DC 2002

*Attorneys for Appellant*


Alison D. Kehner
DTO Law
27 E 28th Street
Suite 208
New York, NY 10016

Megan O'Neill
DTO Law
601 South Figueroa Street
Suite 2130
Los Angeles, CA 90017

*Attorneys for Appellee HP Inc.*


David W. Feder [**ARGUED**]
Fenwick & West
902 Broadway
Suite 14
New York, NY 10010

Laurence F. Pulgram
Fenwick & West
555 California Street
12th Floor
San Francisco, CA 94104

*Attorneys for Appellee NVIDIA Corporation*

**PORTER**, *Circuit Judge*.

Mark Twardzik, for himself and on behalf of others, sued HP and NVIDIA for their marketing of the HP Envy 13 laptop with an NVIDIA graphics processing unit. The District Court dismissed the suit. Based on Twardzik's allegations, his laptop purchase resulted from his misunderstanding of his own research, not HP's or NVIDIA's alleged misconduct. We will affirm.

I

Mark Twardzik was on the hunt for the perfect laptop: a small machine with the performance of its full-size cousins. He saw the HP Envy 13 on Slickdeals.net, a third-party online retailer. One available option for the HP Envy 13 was a dedicated graphics processing unit: NVIDIA's MX150. The MX150 was an "entry-level option for discrete laptop GPUs." J.A. 31. Twardzik began researching the laptop, reviewing benchmark tests performed by third-party reviewers, and seeking out other reviews.

Based on those reviews, Twardzik believed that the MX150 offered "performance comparable to the NVIDIA GeForce GTX 1050, an 'upper mainstream GPU'" produced the year before. J.A. 39. His source of information on the GTX 1050 noted that the chip's performance "can vary quite a lot depending on the cooling performance of the laptop"

3

and that "the notebook model is usually a bit slower" than the desktop model. *NVIDIA GeForce GTX 1050 Mobile*, NotebookCheck, https://perma.cc/RE5R-76BY (last visited July 6, 2023). It also explained that "the graphics card will usually be used for powerful multimedia notebooks and entry-level gaming systems with at least 15.4 inches." *Id.* Undeterred by those warnings, Twardzik believed that any laptop with the MX150 would perform as well as large laptops with the GTX 1050. He did not visit HP's or NVIDIA's websites to research the laptop or the MX150.

"Based on the test results and other reviews of the Class Laptops, Plaintiff believed that the MX150 was a valuable addition to the HP Envy 13." J.A. 39. Twardzik ultimately bought the Envy 13, but not from HP, NVIDIA, or Slickdeals. He instead purchased it from an unaffiliated third-party retailer. He was disappointed when his laptop exhibited "GPU-related issues like frame rate drops and stuttering during graphics-intensive operations like gaming, displaying high resolution '4K' content, and running virtual reality programs." J.A. 40.

It turns out NVIDIA produced two variants of the MX150 with a "wide gap between the performance capabilities." J.A. 24, 33. NVIDIA advertised the performance of the standard chip, noting "up to 3x superior performance-per-Watt" and great improvements over its predecessor. J.A. 36. But it also produced a "slowed" variant of the MX150 that it optimized for small laptops. J.A. 37. Small laptops have "more stringent power supply and heat dissipation requirements" than larger laptops. J.A. 35. GPU manufacturers like NVIDIA accommodate those restrictions by reducing the default clock speed, creating underclocked chips. By reducing the default clock speed, the

4

slowed MX150 draws less power—10 watts rather than 25—and produces less heat. J.A. 34. HP offered the underclocked MX150 as an option for the Envy 13. HP and NVIDIA knew the underclocked chip would not perform at its greatest capacity, but neither noted the difference in marketing the Envy 13. J.A. 37.

Twardzik owned the laptop for three years before filing this action in March 2021. HP and NVIDIA moved to dismiss. Twardzik responded by filing the operative First Amended Complaint. HP and NVIDIA renewed their motion. The District Court dismissed the complaint and denied leave to file a second amended complaint "because [Twardzik] has amended his complaint once already." J.A. 15. Twardzik moved for reconsideration. The District Court considered the motion and declined to reopen the case. Twardzik asks us to reverse the dismissal, either by reinstating his complaint or allowing him to amend.

## II

The District Court had jurisdiction under the Class Action Fairness Act. 28 U.S.C. § 1332(d)(2). Mark Twardzik resides in Maryland. The corporations HP and NVIDIA are both organized under the laws of Delaware with their principal places of business in California. Basic diversity is satisfied. As CAFA requires, the complaint alleges that the aggravated claims exceed $5 million, and HP and NVIDIA did not contest that allegation. We have jurisdiction under 28 U.S.C. § 1291 because the District Court dismissed all claims with prejudice.

We review de novo an order granting a Rule 12(b)(6) motion. *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 264 (3d Cir. 2013). Twardzik's claims sound in fraud, so he

5

"must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). We review the denial of a motion to allow amended pleadings for an abuse of discretion. *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002) (per curiam).

### III

Twardzik brings claims for violating the Maryland Consumer Protection Act, fraudulent concealment, and unjust enrichment. All of his claims were correctly dismissed. Twardzik's allegations foreclose reliance on HP's or NVIDIA's conduct, and HP and NVIDIA were not unjustly enriched by his purchase.

### A

The Maryland Consumer Protection Act prohibits a person from engaging "in any unfair, abusive, or deceptive trade practice" to sell consumer goods. Md. Code Ann., Com. Law § 13-303(1); *see also* § 13-301 (examples of prohibited practices). The MCPA creates a private right of action for individuals to "bring an action to recover for injury or loss sustained by him as a result of" a prohibited practice. § 13-408. Private parties must establish an "actual injury or loss," which is cognizable if the consumer "suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance" on the seller's statement or omission. *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 277 (Md. 2007). The burden to prove reliance is "relaxed" when the case is brought by the government, but that modification does not apply here. *Linton v. Consumer Prot. Div.*, 225 A.3d 456, 466 (Md. 2020). So Twardzik must prove reliance to state a MCPA claim.

6

"The [Maryland Supreme Court] has yet to enunciate the precise standard for reliance under the MCPA in the context of material omissions." *Bank of America, N.A. v. Jill P. Mitchell Living Tr.*, 822 F.Supp.2d 505, 535 (D. Md. 2011). In *Bank of America,* the district court predicted that the proper standard for reliance for both misrepresentations and material omissions would be "substantial inducement." *Id.* at 535 (citing *Luskin's, Inc. v. Consumer Prot. Div.*, 726 A.2d 702 (Md. 1999) and *Nails v. S&R, Inc.*, 639 A.2d 660 (Md. 1994)). Although over a decade has passed since *Bank of America* was decided, the Maryland Supreme Court has yet to enunciate the precise standard for reliance under the MCPA in the context of material omissions.

The Maryland Appellate Court has applied the *Bank of America* standard. *Rich Morton's Glen Burnie Lincoln Mercury, LLC v. Williams-Moore*, 2023 WL 166277, at *5 (Md. App. Ct. Jan. 12, 2023) (unpublished). Although *Rich Morton's* is not binding, it is the best evidence of the standard the Maryland Supreme Court is likely to adopt for reliance on a material omission. So we ask whether HP's and NVIDIA's misrepresentations or omissions substantially induced Twardzik to purchase the Envy 13 with the MX150.

Reliance is also required for Twardzik's common law claims. Fraudulent concealment in Maryland has five elements:

1. The defendant owed the plaintiff a duty to disclose a material fact;
2. The defendant failed to disclose the fact;
3. The defendant intended to defraud or deceive the plaintiff;
4. The plaintiff acted in justifiable reliance on the concealment; and
5. The plaintiff suffered damages as a result.

7

*Blondell v. Littlepage*, 991 A.2d 80, 94 (Md. 2010) (emphasis omitted). Justifiable

reliance is an explicit element. Both parties rely on their arguments on the MCPA claim

to establish reliance on the fraudulent concealment claim. So we assume that there is no

material difference between the reliance standards as applied in this case.

Finally, Twardzik must prove reliance for his unjust enrichment claim. For unjust

enrichment, a plaintiff must show that he conferred a benefit on the defendant, the

defendant appreciated or knew of the benefit, and under the circumstances, it would be

inequitable for the defendant to retain the benefit without payment. *Hill v. Cross Country

Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007). The remedy for unjust enrichment is

restitution. *Assanah-Carroll v. Law Offices of Edward J. Maher, P.C.*, 281 A.3d 72, 82

(Md. 2022).

Twardzik himself summarizes the relevant caselaw on restitution and unjust

enrichment. He correctly concludes that restitution requires "a showing of actual

reliance" to justify disgorging ill-gotten profits. Appellant's Opening Br. 34; *Assanah-

Carroll*, 281 A.3d at 82–83 ("a plaintiff seeking disgorgement/restitution must show

reliance on the misrepresentation").

Therefore, all three of his claims require reliance.

B

The allegations do not show reliance under any standard. Twardzik baldly alleges

that he purchased the laptop "[i]n reliance on Defendants' misleading marketing." J.A.

39; *see also* J.A. 36. That allegation lacks factual support and fails to support his claims

for at least two reasons.

First, Twardzik does not include allegations that he read or saw any marketing material published by HP or NVIDIA. Twardzik instead alleges that he saw advertisements on Slickdeals.net. He wants to impute those advertisements to HP and NVIDIA without allegations that either would have endorsed the advertisements for the laptop he ultimately purchased. He urges the Court to infer "that the advertisements on Slickdeals.net contained the same or materially similar representations" that HP and NVIDIA made. Appellant's Opening Br. 36. Those inferences are not appropriate under the strictures of Rule 9, which require Twardzik to plead fraud with particularity.[1]

Second, Twardzik's argument fails because he did not actually rely on the statements on Slickdeals.net when he decided to purchase his laptop. He instead researched the laptop by scouring the internet for independent reviews. Through that process, he read a review of a graphics card he expected would perform comparably to the MX150. That review warned that the card's performance varies across laptops and may be limited in laptops under 15 inches. That information does not support a reasonable conclusion that the Envy 13 would fully utilize the MX150's capabilities. Twardzik's misunderstanding of his own research substantially induced his purchase, not HP's and NVIDIA's marketing materials. Without reliance, his claims fail.

---

[1] The dissent cites *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997) for the proposition that "Rule 9(b)'s particularity requirements are relaxed for fraudulent omissions, 'where the factual information is peculiarly within the defendant's knowledge or control.'" However, the next sentence of *In re Burlington* adds a caveat relevant here: "… even under a relaxed application of Rule 9(b), boilerplate and conclusory allegations will not suffice." *In re Burlington*, 114 F.3d at 1418 (citing *Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 285) (3d Cir. 1992)).

Twardzik presents two arguments against dismissal for his failure to plead reliance. First, he claims his research should not be held against him. He posits that he read performance reviews of the "*actual* MX150," but the GPU in the Envy 13 "was not the MX150." Appellant's Opening Br. 40. The complaint alleges that the Envy 13 has an underclocked MX150. J.A. 26. By claiming that his laptop's GPU is not the MX150, he strays from his allegations. Plus, one source cited in his complaint refutes the position he advances here: it refers to the standard and underclocked chips as "multiple variants of the same silicon." *Nvidia has been sneaking in slower GeForce MX150 '1D12' variant onto some Ultrabooks*, NotebookCheck, https://perma.cc/UMQ2-CBNU (last visited July 7, 2023). So his complaint and his sources agree that his laptop has the MX150.

Second, Twardzik asks us to presume reliance. The Maryland Supreme Court has not adopted that practice. "Success in Maryland on a civil claim of fraud *requires proof* of reliance." *Philip Morris Inc. v. Angeletti*, 752 A.2d 200, 234 (Md. 2000) (emphasis added). *See also Linton*, 225 A.3d at 466 (discussing *Consumer Prot. Div. v. Consumer Publ'g Co.*, 501 A.2d 48 (Md. 1985)). In *Philip Morris*, the court acknowledged that "a leading treatise" supported presuming class-wide reliance, but it rejected that proposal as unreasonable given the differences among class members. 752 A.2d at 236 n.31. We believe it would do the same here. *See Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1445 (3d Cir. 1996) (we apply "existing state law as interpreted by the state's highest court in an effort to predict how that court would decide the precise legal issues before us").

10

For these reasons, we will affirm dismissal of Twardzik's MCPA and fraudulent concealment claims for failure to plead reliance.

C

The District Court dismissed Twardzik's claims with prejudice. Twardzik asserts that the District Court abused its discretion by denying him leave to file an amended complaint. We find that the District Court did not abuse its discretion for two reasons.

First, Twardzik did not properly move for leave to amend his complaint. Instead, he requested leave to amend at the close of his brief in opposition to the motion to dismiss. But "a bare request in opposition to a motion to dismiss" is not a motion under Rule 15. *United States ex rel. Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 243 (3d Cir. 2013) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1280 (D.C. Cir. 1994)).

Second, Twardzik did not submit a draft amended complaint. This failure "is fatal to a request for leave to amend." *Fletcher-Harlee Corp. v. Porte Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007). Twardzik had an opportunity after the dismissal order to propose an amended complaint: after all, he moved to reargue the motion to dismiss. But at that time he did not ask for leave to amend or provide a proposed amended complaint.

"[A] district court need not worry about amendment when the plaintiff does not properly request it." *Fletcher-Harlee*, 482 F.3d at 252. Because Twardzik failed to file a proper motion for leave to amend and never proposed an amended complaint, the District Court did not abuse its discretion by denying relief.

11

\* \* \*

We will affirm the District Court's judgment.

_____

**FREEMAN**, *Circuit Judge*, dissenting in part.

I agree with the majority's conclusion that Twardzik failed to allege reliance on Defendants' affirmative misrepresentations. But I would hold that Twardzik's material omission claims are backed by sufficient allegations to avoid dismissal, so I respectfully dissent from that portion of the majority opinion.

The Maryland Consumer Protection Act ("MCPA") provides a remedy for consumers who are injured by unfair or deceptive trade practices. Among its prohibited practices are the "[f]ailure to state a material fact if the failure deceives or tends to deceive," Md. Code Ann., Com. Law § 13-301(3), and the "omission of any material fact with the intent that a consumer rely on the same in connection with . . . [t]he promotion or sale of any consumer goods," *id.* § 13-301(9)(i).

Twardzik seeks MCPA relief for material omissions, and he pleads common law fraud and unjust enrichment based on the same allegations. The majority affirms the dismissal of these claims for failure to plead reliance.[1]  Maj. Op. at 9.

In my view, Twardzik does plead reliance. The reliance requirement comes from the MCPA's prescription that "any person may bring an action to recover for injury or loss sustained by him *as the result of* a practice prohibited by this title." Md. Code Ann.,

---

[1] The parties do not dispute on appeal whether Twardzik's complaint sufficiently alleges (1) materiality and (2) the intentional conduct required under section 13-301(9)(i) of the MCPA. *See Luskin's, Inc. v. Consumer Prot. Div.*, 726 A.2d 702, 717 (Md. 1999) ("The omissions proscribed by § 13–301(9) clearly require that the concealment, suppression or omission of any material fact be knowing, as well as made with the intent that a consumer rely on the same." (internal quotation marks omitted)).

Com. Law § 13-408(a) (emphasis added). Reliance, therefore, tethers a defendant's prohibited practice to the plaintiff's injury. So Twardzik must allege he suffered a loss as the result of the Defendants' omission. In other words, he must allege that Defendants' omissions substantially induced him to purchase a laptop with an MX150 GPU. Maj. Op. at 7 (predicting the standard the Maryland Supreme Court is likely to adopt). I would conclude that Twardzik does just that.

Twardzik alleges he purchased an HP laptop and paid extra for an upgrade containing the MX150 GPU, expecting the upgrade to enhance the laptop's performance. But he did not know that NVIDIA had produced "two variants of the MX150" that had a "wide gap" in performance, and it was the "'slowed' variant" that was included in his laptop. Maj. Op. at 4 (quoting the First Amended Complaint). He alleges that "[t]he performance disparity between the two variants is not mentioned in marketing materials or packaging of the MX150 or the laptop computers containing the Slowed MX150," like the laptop he purchased. J.A. 37. And he plausibly pleads that the omission was intentional: he alleges that NVIDIA assigned the variants two different internal model numbers but failed to disclose to consumers the difference between the variants, and that HP failed to disclose which variant is in any given laptop. J.A. 37-38. He further alleges that he "would not have purchased his [upgraded laptop] if he had known that it contained the Slowed MX150, or he would have paid less for [it]." J.A. 39-40.

So he alleged a financial injury that he tethered to Defendants' failure to disclose the existence of two variants of the MX150 that performed differently and fulfilled different needs. Applying the reliance standard the majority articulated, I would hold that

2

Twardzik plausibly pled that Defendants' material omissions substantially induced him to pay extra for the upgrade.[2]

The majority reaches the opposite conclusion. As a preliminary matter, it applies the "strictures of Rule 9, which require Twardzik to plead fraud with particularity." Maj. Op. at 9; *see also id.* at 6. But this Court and others have recognized that Rule 9(b)'s particularity requirements are relaxed for fraudulent omissions, "where the factual information is peculiarly within the defendant's knowledge or control." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997). *See also, e.g.*, *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 538, 545 (D. Md. 2011) (applying a relaxed Rule 9(b) standard to a MCPA claim of fraudulent concealment by omission); 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1298 (4th ed. 2023 update) ("Some courts apply Rule 9(b) more leniently when omissions rather than affirmative misrepresentations are involved, which seems appropriate."). As the Fourth Circuit explained, "[i]n cases involving alleged fraud by omission or concealment, it is well-nigh impossible for plaintiffs to plead all the necessary facts with particularity, given that those facts will often be in the sole possession of the defendant." *Corder v. Antero Res. Corp.*, 57 F.4th 384, 402 (4th Cir. 2023). *See also id.* at 401-02 (collecting federal Court of Appeals cases applying a relaxed Rule 9(b) standard).

---

[2] I would reach the same conclusion under any plausible variation of the reliance standard. *See Bank of America, N.A. v. Jill P. Mitchell Living Tr.*, 822 F. Supp. 2d 505, 535 (D. Md. 2011) (noting that the Maryland Court of Appeals has rejected but-for causation).

Twardzik alleged that Defendants had exclusive knowledge of the performance disparity between the two variants of the MX150 and concealed it. J.A. 37, 43. So I would apply a relaxed Rule 9(b) standard to his material omission allegations. And I would conclude that he satisfies that standard because he stated factual allegations that make his belief plausible. *See, e.g.*, J.A. 37-38 (alleging that the two MX150 variants had different internal model numbers that Defendants used in different laptops, unbeknownst to consumers).

The majority faults Twardzik for failing to allege that he directly viewed any of Defendants' marketing, or that Defendants endorsed the advertisements he saw on a third-party website. Maj. Op. at 9. But Twardzik's "pleading receives the benefit of reasonable inferences at the motion-to-dismiss stage." *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 334 (3d Cir. 2022). It is reasonable to infer that Defendants' disclosure of a material fact would have reached Twardzik and other customers—whether via the website of the online retailer from whom he purchased the laptop, the packaging of the laptop, or even certain third-party websites. *See* J.A. 37 (alleging omission from packaging of the slowed MX150 and the laptops containing it); J.A. 39 (stating he purchased the laptop from online retailer adorama.com). When a customer shops at the local electronics store, he reasonably trusts that marketing and product information will conform to manufacturer specifications. The same is true with online electronics stores. Placing the onus on the consumer to discern whether a manufacturer has endorsed an intermediate seller's marketing subjects the consumer to unrealistic expectations at the pleading stage.

4

Next, the majority faults Twardzik for "misunderstanding . . . his own research." Maj. Op. at 3, 9. In its view, Twardzik should have known from consulting third-party websites that the MX150 upgrade might not boost his laptop's performance. Why? Because one review of a GPU that Twardzik believed would be comparable (the GTX 1050) "warned that . . . performance varies across laptops." Maj. Op. at 10. But as the majority opinion notes, the GTX 1050 review implied that that product came in two different models: a desktop model and a slower notebook model. *See* Maj. Op. at 4 (quoting a GTX 1050 review stating "the notebook model is usually a bit slower"). So it appears that the manufacturer or seller of the GTX 1050 disclosed the existence of a slower notebook model—in contrast to Defendants' alleged failure to do the same for the MX150.

In any event, I would not hold Twardzik's reference to the GTX 1050 against him. At the motion to dismiss stage, we must construe allegations in the light most favorable to the plaintiff. So I would not discount Twardzik's material omission allegations based on a single warning about a product he did not purchase.

\* \* \* \* \*

I would hold that Twardzik plausibly alleged a material omission in violation of the MCPA and common law. I therefore respectfully dissent from the majority's decision to affirm the dismissal of those claims.

5